610 A.2d 988

**William J. VILES, Jr.,**

v.

**Potjarin Sew Yong VILES, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 28, 1992.

Filed June 3, 1992.

Frank L. Kroto, Jr., Erie, for appellant.

Mary M. Isabella, Pittsburgh, for appellee.

Before TAMILIA, HUDOCK and BROSKY, JJ.

BROSKY, Judge.

This is an appeal from the final order of the trial court which provided for equitable distribution, alimony and counsel fees. Appellant presents the following issues for our review: (1) whether the trial court erred in awarding all liquid assets to appellee and all non-liquid assets to appellant; (2) whether the trial court erred in refusing to award appellant alimony for a period in excess of eighteen months; (3) whether the trial court erred in failing to consider appellant's reliance upon a letter in which appellee had promised that he would provide for the continuation of appellant's lifestyle for the duration of her life. For the reasons set forth below, we affirm the equitable distribution order.

Before addressing the merits of appellant's claims, it is necessary to recount the relevant history of these acrimonious and unnecessarily protracted divorce proceedings. Appellant, Potjarin Sew Yong Viles, and appellee, William Viles, were married in Bangkok, Thailand in December, 1968. One child, Cynthia Viles, was born during the marriage and is now an adult. Throughout the course of their marriage, the parties enjoyed an affluent lifestyle, residing in various Southeast Asian countries, as well as in southern California and Pennsylvania.

In 1983–1984, the parties instituted divorce proceedings while they were domiciled in California. During the pendency of the California divorce action, appellee's employment required him to transfer to Erie, Pennsylvania where he moved with his daughter. The California divorce action was later discontinued upon mutual agreement of the parties as they attempted a reconciliation. Consequently, appellant joined her husband and daughter in Pennsylvania. The reconciliation was unfortunately unsuccessful and appellee instituted Pennsylvania divorce proceedings in 1986.[1]

1. In 1988, appellee was transferred to St. Petersburg, Florida where he now resides. Appellant, however, remained in the parties' Erie residence.

.The equitable distribution matters were ultimately bifurcated from the divorce action and a divorce decree was entered on November 13, 1990. After numerous hearings and extensive out-of-state discovery proceedings, the master filed his report on November 13, 1990. Appellant filed timely exceptions and supplemental exceptions *nunc pro tunc* to the master's recommendations. The trial court reviewed all of the exceptions and affirmed the master's recommended distribution of marital property. However, the trial court extended the time period in which appellant was to receive alimony and further awarded counsel fees to appellant. Following entry of the court's final order on April 8, 1991 both parties filed timely notices of appeal with this court.[2]

As a preliminary matter, we are compelled to discuss appellant's violations of our rules of appellate procedure.[3] We begin with a review of the jurisdictional statement which asserts that jurisdiction is conferred upon this court

2. Appellee filed appeals docketed at Nos. 00917 and 01432 Pittsburgh 1991; appellant filed a cross-appeal that was docketed at No. 00918 Pittsburgh 1991. The appeals instituted by appellee were later discontinued, and therefore, only appellant's appeal docketed at No. 00918 is currently before this court. After appellant's notice of appeal had been filed, appellant's trial counsel, David Hunter, Esq., sought permission to withdraw from his representation of appellant. Counsel's petition was granted and appellant was instructed to obtain new counsel or proceed *pro se.* Appellant subsequently obtained new appellate counsel, Mary Margaret Isabella, Esq., who has entered her appearance and acted on appellant's behalf. In addition, we observe that appellant filed a motion to proceed on the original record. Appellant's motion was dismissed as moot by this court in a *per curiam* order entered September 20, 1991. Appellant renewed her motion to proceed on the original record, and appellee filed a motion to quash appellant's second motion. By *per curiam* order entered October 28, 1991, this court granted appellant's motion to proceed on the original record and denied appellee's motion to quash.

3. Appellee discusses these violations in his brief and has requested that we quash the appeal on this basis. Appellee's Brief, at 12–14. Although we agree with appellee that the violations are egregious and inexcusable, we decline to quash the appeal because the errors do not substantially hamper our ability to engage in effective and meaningful appellate review. *See Williamson v. Williamson,* 402 Pa.Super. 276, 289, 586 A.2d 967, 973 (1991) (in which we declined to dismiss the appeal because of procedural defects).

pursuant to 17 Pa.C.S.A. § 211.302. Appellant's jurisdictional statement is erroneous because the statute referenced therein does not exist. We presume that appellant intended to cite 17 P.S. § 211.302 which did in fact vest jurisdiction over certain classes of appeals in this court. However, the Judiciary Act Repealer Act expressly repealed this statutory provision almost fourteen years ago. 42 Pa.C.S.A. § 20002(a)[1443]. Although 17 P.S. § 211.302 has been repealed, the contents of this statute were substantially reenacted by the Judiciary Act of July 9, 1976, P.L. 586, No. 142, § 2, effective June 27, 1978 and are now codified in the Judicial Code, 42 Pa.C.S.A. § 742. *See* 42 Pa.C.S.A. § 742, historical note. Because it is clear that the equitable distribution order in this case was properly appealable under § 742 of the Judicial Code, we may exercise jurisdiction over this appeal.

In addition to her defective jurisdictional statement, we note that appellant has failed to comply with Pa. R.A.P., Rules 2111(a)(8) and (b), 42 Pa.C.S.A., which require a copy of the lower court opinion to be attached to appellant's brief. Although the opinions of the lower court and the master's recommendations are contained in the certified record and have been further supplied to this court by appellee, we remind appellant that it was her responsibility, not that of the opposing party, to provide this court with the appropriate lower court opinions. Appellant has also failed to adhere to the requisites of Rules 2117(a) and (b) (identifying contents and format of appellant's statement of the case and providing that all argument is to be excluded therefrom). The statement of the case is not in the form specified by the rule and it improperly contains argument. Moreover, this rule requires that the statement of facts must be a *closely condensed* chronological statement in narrative form. Pa. R.A.P., Rule 2117(a)(4), 42 Pa.C.S.A. (emphasis added). By way of contrast, appellant's statement covers more than ten pages, an amount which we note is greater than the entire argument section of appellant's brief. Finally, appellant's concluding statement violates

Rule 2111(a)(7) in that her conclusion is not "short," and it improperly inserts argument regarding unsubstantiated allegations of ethnic prejudice perpetrated by the lower court. Because none of the above violations insurmountably impedes our ability to review the issues raised by appellant, we shall overlook the procedural irregularities in appellant's brief and proceed to reach the merits of this appeal.

Appellant first attacks the trial court's equitable distribution scheme. Before addressing this claim, we note that

> [o]ur scope of review in equitable distribution matters is limited. It is well established that absent an abuse of discretion on the part of the trial court, we will not reverse an award of equitable distribution. [In addition,] [w]hen reviewing the record of the proceedings, we are guided by the fact that trial courts have broad equitable powers to effectuate [economic] justice and we will find an abuse of discretion only if the trial court misapplied the law or failed to follow proper legal procedures. [Further,] [t]he finder of fact is entitled to weigh the evidence presented and assess its credibility. The fact finder is free to believe all, part, or none of the evidence and the Superior Court will not disturb the credibility determinations of the court below.

*Murphy v. Murphy*, 410 Pa.Super. 146, 157–58, 599 A.2d 647, 653 (1991) (citations omitted). *See also Lyons v. Lyons*, 401 Pa.Super. 271, 276, 585 A.2d 42, 45 (1991) and *Zollars v. Zollars*, 397 Pa.Super. 204, 207–208, 579 A.2d 1328, 1330 (1990), *allocatur denied*, 527 Pa. 603, 589 A.2d 693 (1991) (for similar considerations). We will evaluate appellant's arguments and the equitable distribution scheme adopted by the trial court in accordance with these principles.

The master identified the parties' marital property and assigned valuations [4] thereto as follows:

---

4. The master was cognizant of the fact that two of the parties' parcels of real property are encumbered by mortgages and/or other debts.

| | |
|---|---|
| California property | 167,000.00 |
| Arizona property | 30,000.00 |
| Erie property | 58,000.00 |
| GTE pension [5] | 110,833.00 |
| GTE savings plan | 70,348.00 |
| Erie furnishings | 24,140.00 |
| California furnishings | 21,600.00 |
| Decorator items | 6,000.00 |
| Husband's jewelry | 2,650.00 |
| Wife's jewelry | 30,000.00 |
| Gun collection | 16,125.00 |
| Gold coins | 2,500.00 |
| United Services Gold Share Funds | 6,000.00 |

Master's Report, dated November 13, 1990, at 16–17. The total value of the above items was calculated to be $545,-196.00. *Id.* at 17. After evaluating all relevant statutory factors, the master concluded that the marital estate was to be apportioned in a 58/42 ratio, with appellant receiving the larger share of the marital assets. *Id.* at 12–16. To effectuate this distributional scheme, the master awarded the California and Arizona real estate, the California and Erie home furnishings, the decorator items, and appellant's jewelry to appellant. *Id.* at 17. The balance of the marital assets, to-wit, the GTE pension, GTE savings plan, gun collection, coins and gold share funds, were awarded to appellee. *Id.* at 17–18.

The Erie real property was to be sold with the proceeds divided between appellant and appellee in accordance with the proposed 58/42 distribution ratio. *Id.* at 17–19. Appellant neither challenges the master's classification of the above marital assets nor the values attributed to each. Rather, appellant contends that the distribution scheme, as a whole, is unfair because: (1) appellee has allegedly concealed marital assets; (2) appellee earns approximately $100,000.00 per year while appellant earns nothing; and (3) it does not permit her to experience the same standard of living which she had during the parties' marriage. Appellant also suggests that the equitable distribution scheme is

Consequently, the master assigned net rather than gross values to these particular properties.

5. The value of appellee's pension was calculated using the immediate offset method. Appellant's Exhibit MM (actuarial report prepared by Randall Luzader).

improper because she received only "non-liquid" assets while appellee received all of the "liquid" assets. These arguments will be addressed *seriatim*.

With respect to the allegedly hidden assets, this issue was addressed *ad nauseum* at the master's hearings. We have sedulously examined each page of the voluminous hearing transcripts, as well as the parties' exhibits, and we are thoroughly convinced that appellee has not concealed any marital assets. As revealed by the hearings and the relevant exhibits, the marital assets which had been in the possession of appellee's mother while appellee worked overseas were ultimately relinquished to the parties upon their return to the United States and were used by the parties to purchase other marital assets in California and Erie. Master's Report, at 11–12. Despite having numerous opportunities, appellant failed to demonstrate that the allegedly concealed items actually exist or that they were improperly appropriated by appellee. *Id.* We therefore find appellant's unsubstantiated and repeated allegations on this subject to be frivolous and wholly lacking in merit.

As for the parties' respective earning capacities, these factors were expressly taken into account by the master, as evidenced by his recommendation that appellant was to receive the greater share of the marital estate. *Id.* at 13, 16 and 20. The trial court likewise considered these factors and concluded that the master's proposed distribution was fair and reasonable under the circumstances present in this case. Trial Court Opinion, filed April 8, 1991, at 4. Because the record indicates that the trial court considered the parties' respective earning capacities, the trial court did not abuse its discretion on this basis.

█ Appellant's third contention similarly affords her no relief. Appellant does not refer us to any authority, nor are we aware of any, which mandates the imposition of an equitable distribution scheme that enables a spouse to possess the same standard of living after the divorce that he or she had prior to the divorce. Rather, the Divorce Code only requires the division of marital property in a manner which

effectuates economic justice. 23 Pa.C.S.A. § 3102(a)(6) and § 3502(a). Based on our review of the certified record, the trial court's method of distribution sufficiently achieves the goals of the Divorce Code, and the fact that appellant may or may not be able continue the same luxury lifestyle which she enjoyed during the marriage does not constitute a misapplication of law or abuse of discretion by the trial court.

Appellant's final claim regarding the equitable distribution order is that the trial court abused its discretion in awarding her all of the allegedly "non-liquid" assets. We find appellant's argument on this subject to be misplaced. A review of the proposed distribution reveals that neither of the parties truly received "liquid" or cash assets. With the exception of his pension and tax-deferred savings plan, none of appellee's property is in cash form. Further, appellee's pension and savings plan are not "liquid" to the extent that appellee cannot sell or transfer these assets. Moreover, appellee's entitlement to receive his pension or savings is contingent upon his date of retirement. Under these circumstances, appellant's contention that she received assets of lesser liquidity than appellee is without merit.

Appellant's second allegation of error relates to the award of alimony. In evaluating questions of this type, our standard of review is limited to a determination of whether the trial court abused its discretion. *Edelstein v. Edelstein*, 399 Pa.Super. 536, 540, 582 A.2d 1074, 1076 (1990), *allocatur denied*, 528 Pa. 611, 596 A.2d 157 (1991). We will examine the trial court's decision in accordance with this standard.

In this case, the master initially recommended that appellant receive alimony in the sum of $1,000.00 per month for a period of six (6) months. The trial court extended this award for an additional year, thus awarding appellant $1,000.00 per month for eighteen (18) months. Trial Court Opinion, filed April 8, 1991, at 5; Trial Court Order, dated April 8, 1991, at paragraph 6. Although appellant contends that the trial court failed to consider certain factors in

fashioning the alimony award, she chooses to ignore other evidence which necessarily affects her entitlement to alimony and appellee's ability to pay it.

During the equitable distribution/alimony *pendente lite* hearings, it was revealed that appellant had received the following property: three "trust deeds" which had a combined worth of $48,924.00;[6] a federal income tax refund in the amount of $6,800.00; and three hundred (300) shares of GTE stock which appellant sold for more than $10,000. N.T. 8/22/88–8/24/88 at 283–284, 286, 287 and 288. Although appellant testified that some of these funds were utilized to preserve the marital property, she also admitted that she: (1) bought a $4,000.00 fur coat; (2) spent $10,-000.00 in Hong Kong and Thailand for custom-made clothing; (3) purchased $2,000.00 in sterling silver and/or silver plate; (4) paid for several trips to Thailand for both herself and her daughter; and (5) that she financed two trips around the United States, including airfare from Thailand, for two members of her family. *Id.* at 301, 328, 329–332, 335, 352, 353–354 and N.T. 10/19/88 at 79–81. Appellant additionally arranged, by forging appellee's signature, for the mortgage payments on the California property to be reduced to a minimal amount while she received the excess funds.[7] N.T. 9/5/89 at 74–76. Appellant further disposed

---

**6.** The trust deeds were actually second or third mortgages on real property held by the parties in California. The trust deeds were valued at $15,015.00, $10,374.00 and $22,535.00 respectively. N.T. 8/22/88–8/24/88 at 283–284 and 287.

**7.** At the time of these hearings, the tenant of the California property paid approximately $1,100.00 per month. The rental receipts were then applied by the bank towards the reduction of the mortgage debt. Appellant, however, had the mortgage payments reduced to approximately $150.00 per month for a six-month period. Thus, appellant received the balance of approximately $950.00 per month while the reduction was in effect.

At a subsequent hearing, it was later revealed that the rental payments on the California property had been increased to approximately $1,400 per month. N.T. 9/24/90 at 8–9. Out of these funds, $1,150 was applied to reduce the mortgage while the remaining $250.00 was placed in a separate account listed under the name of appellant's sister. *Id.* at 9 and 86. It thus appears that appellant has

of some of the Erie furnishings, her automobile and various pieces of jewelry without appellee's knowledge or consent. N.T. 6/28/89 at 87–101. Moreover, appellant's actions in prolonging these proceedings has resulted in the dissipation of assets to the extent that appellee was required to pay appellant $5,000.00 for her counsel fees, his own legal fees which exceeded $25,000.00, exclusive of the fees associated with this appeal, and all of the costs of these proceedings which are approximately $17,000.00.[8]

In addition to dissipating or misappropriating marital assets, appellant has provided this court with a myopic and distorted view of the parties' respective incomes and assets in support of her alimony claim. First, as noted above, appellant repeatedly insists that appellee has hidden assets, which as the record demonstrated, are nonexistent. Appellant similarly argues that appellee has annual earnings in excess of $100,000.00, when in fact his reported income was $85,667.00. N.T. 9/24/90 at 16. Appellant also directs our attention to appellee's inheritance from his mother's estate, a factor which was expressly taken into account by the trial court in extending appellant's alimony. Trial Court Opinion, filed April 8, 1991, at 5. However, appellant disregards her own inheritance in the form of an undisclosed amount of realty which is located in Thailand.[9] N.T. 8/22/88–8/24/88 at 197–198. Appellant further fails to consider the fact that appellee has been solely responsible for the support of the parties' daughter throughout the pendency of these proceedings, and that he has continued to finance his daughter's college education. N.T. 6/1/88 at 6–7; N.T. 9/24/90 at 42–43. Moreover, as discussed above, appellee

access to the additional funds which have been accruing in this account.

8. The trial court and the master directed appellant to reimburse appellee for approximately $9,000.00 of these costs. Trial Court Order, dated April 8, 1991, at paragraph 5(f).

9. Although appellant indicated that it was not the custom in oriental families to sell their property, the fact that appellant owns the land and the value thereof, which appellant did not provide to the court, must nevertheless be considered as one of the elements in determining appellant's entitlement to alimony. 23 Pa.C.S.A. § 3701(b)(4).

has expended a substantial amount in legal costs, in addition to the alimony *pendente lite* and other court-ordered payments to appellant, all of which have necessarily drained appellee of some of his alleged assets. When all of the above circumstances are taken into consideration, along with appellant's educational level, age, health, and the distribution of the marital property, we are unable to agree with appellant that the trial court abused its discretion by refusing to either award appellant a greater amount of alimony or extend the period in which appellant is to receive the alimony.

The third issue raised by appellant relates to an alleged letter from appellee that was sent to appellant's parents prior to the parties' marriage. Although a copy of this letter was accepted as an exhibit by the master, the letter is written in oriental characters which this court lacks the ability to correctly translate. However, we note that an alleged translation of the letter, which was apparently performed by appellant, was also accepted by the master and is attached to the letter. Neither the translation nor the letter were certified for accuracy and authenticity.[10] Assuming, for the purpose of our review, that the translation of the letter is accurate and that the letter itself is authentic, we decline to adopt appellant's suggestion that the letter should be enforced as a pre-nuptial agreement.

10. The alleged translation appears as follows:
Dear Mr. and Mrs. Kwok:
Please forgive me in writing this letter to you for such an importance matter. Because I cannot speak neither Thai nor Chinese! My name is William J. Viles, Jr., 38 years old American. I'm a publishing manager at GTE Directory Co. in Honolulu. I've been working in this co. for 11 yrs. My future is excellent. I'm writing this letter to ask for your approval to mary Sewyong. Kindly do not worry as her happiness is my only concern I'll not cause her any sorrow, but only happiness. Her wishes is my command. I sincerely hope that you'll approve our marriage, and am looking forward to hearing from you soon.
Respectfully,
/s/ William J. Viles, Jr.
Appellant's Exhibit 50A (translation).

We initially observe that the letter does not contain any of the typical elements of a contract, let alone a pre-marital agreement, as it is not signed by both of the parties, does not recite the consideration given in exchange for the agreement, and does not purport to delineate the parties' respective rights and responsibilities as to property, alimony and/or spousal support or counsel fees in the event that the marriage is terminated. *See Hamilton v. Hamilton*, 404 Pa.Super. 533, 535, 591 A.2d 720, 721 (1991) (as an example of a pre-marital agreement). Further, the letter was written to appellant's parents, not appellant. Thus, any promises contained in the letter were made directly to appellant's parents rather than appellant. Appellant does not contend that she detrimentally relied upon the alleged promises made to her parents nor does she assert that the letter induced her to marry appellant.

More importantly, the letter is devoid of any promise to support appellant for the duration of her life regardless of the parties' marital status. The letter similarly does not promise that appellee will support appellant in the same type of luxurious lifestyle which previously had been supplied by appellant's parents. Instead, the letter merely expresses appellee's intent to make appellant happy and that he desired the approval of appellant's parents. Such a broad statement simply cannot be construed as a specific agreement to provide any support to appellant, let alone a continuation of her luxurious lifestyle, after the parties' divorce. Accordingly, the trial court did not abuse its discretion in failing to enforce the letter as a pre-marital agreement.

In sum, we have thoroughly evaluated appellant's allegations of error in light of the certified record. In conducting this review, we find that appellant has failed to establish that the trial court abused its discretion or misapplied the law in entering the equitable distribution and alimony award. We therefore affirm the order of the lower court.

Order affirmed.

TAMILIA, J., files a concurring and dissenting opinion.

TAMILIA, Judge, concurring and dissenting.

I concur in so much of the Opinion of the majority which affirms the award of equitable distribution by the trial court. I agree with the appellant that much of the award to her is in fixed assets and thereby limits its utility in providing for her present and immediate foreseeable needs.

Under the circumstances of this case, however, a different division of property is hard to conceive without creating greater hardship on both parties.

I strongly differ in the affirmance of the trial court's award of alimony in the amount of $1,000 per month for eighteen months. The trial court recognized the award of $1,000 for six months by the Master was totally inadequate and increased the time the award was to run to eighteen months. Under the facts of this case, the award was arbitrary and failed to consider the lifestyle of the parties, the deficits of the wife which could be longstanding if not permanent and provided no direction or guidance whereby the wife could become self-supporting. Merely alleging that the wife has a foreign language skill which might be saleable as a translator does not establish the potential or availability of employment in that regard. While the supporting spouse has no obligation to see that dependent spouse's lifestyle remains unchanged from that enjoyed during marriage once the divorce decree has been entered, *Fexa v. Fexa*, 396 Pa.Super. 481, 578 A.2d 1314 (1990), the new emphasis of the Divorce Code in assuring economic justice must consider the needs of a spouse of twenty years who is foreign born with language impediments and no work skills. She may not be abandoned in eighteen months and must be given sufficient assistance and rehabilitation to cause her to be self-supporting if possible. This case requires that alimony be awarded of unlimited duration. *Pacella v. Pacella*, 342 Pa.Super. 178, 492 A.2d 707 (1985); *Hodge v. Hodge*, 337 Pa.Super. 151, 486 A.2d 951 (1984). The law as to permanent alimony was substantially changed in 1988 to fulfill the underlying thrust of the code to provide economic justice by mandating that the true need of

the spouse be considered rather than impose a limited award to permit the spouse to obtain employment or develop an employable skill. 23 P.S. § 501(c), pursuant to the act of 1980, provided:

(c) Unless the ability of the party seeking the alimony to provide for his or her reasonable needs through employment is substantially diminished by reason of age, physical, mental or emotional condition, custody of minor children, or other compelling impediment to gainful employment, the court in ordering alimony shall limit the duration of the order to a period of time which is reasonable for the purpose of allowing the party seeking alimony to meet his or her reasonable needs by:

(1) obtaining appropriate employment; or

(2) developing an appropriate employable skill.

This section was generally taken to mean (erroneously) that alimony should be time limited and rehabilitative with little consideration given to the true need of the spouse resulting in the general impoverishment of women and enrichment of men resulting from such an application.

The 1988 amendment to the Divorce Code, now contained at 23 Pa.C.S. § 3701(c), provides:

.    .    .    .    .

(c) Duration.—The court in ordering alimony shall determine the duration of the order, which may be for a definite or an indefinite period of time which is reasonable under the circumstances.

This shift from a rehabilitative mode to one of need and fundamental justice requires that when there is no evidence that rehabilitation will occur in the foreseeable future, an award indefinite in time is most appropriate. The court's statement, pursuant to section (d), *Statement of reasons*, for the limited award does not meet the test for denial of an indefinite award. Finding that appellant could work as an interpreter because of her skill in the Thai language, without consideration of the demand for such a skill or her equally necessary skill in English required to make it a viable option, simply avoided the requirement of the act.

110

An indefinite Order will assure some security to the appellant in attempting to reorder her life. The amount of the Order is not so great that she would be encouraged to do nothing to advance herself. The court, under section (e), *Modification and termination*, has sufficient control over the duration of the Order to make necessary changes as circumstances allow. I would remand with direction to the trial court to make the duration of the Order indefinite and explore further the appellant's potential for becoming self-sufficient.