633 A.2d 634

**Genevieve R. FONZI, Appellee,**

v.

**Angelo A. FONZI, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 13, 1993.

Filed Nov. 4, 1993.

96

Gary G. Gentile, Pittsburgh, for appellant.

Patricia G. Miller, Pittsburgh, for appellee.

Before KELLY, POPOVICH and BROSKY, JJ.

POPOVICH, Judge:

This is an appeal from the final decree of September 23, 1992, entered in the Court of Common Pleas of Allegheny County. We are presented with questions of whether the

lower court abused its discretion in determining the equitable distribution of marital property. Upon review, we affirm.

We recount the history of this case as follows: Appellant ("husband") and appellee ("wife") were originally married on November 5, 1954, when each was eighteen years old. On May 8, 1959, the parties were divorced but subsequently entered into a common law marriage in April, 1962, which was solemnized in 1974. In December, 1986, the parties separated and were divorced by decree entered on July 24, 1987. On June 28, 1990, the lower court entered an order appointing William L. Steiner, Esquire, Special Master to conduct hearings and determine claims for equitable distribution, alimony and counsel fees. From October 29, 1990, through January 16, 1991, the Master conducted six days of hearings. On December 6, 1991, the Master submitted his Report. Thereafter, both parties filed timely exceptions to the Master's Report. On June 23, 1992, wife died unexpectedly. On July 20, 1992, the court below entered a memorandum and final decree sustaining in part, and dismissing in part, both parties' exceptions to the Master's Report. Husband then filed a motion for reconsideration. On September 23, 1992, the lower court entered a memorandum and final decree which sustained five of husband's exceptions and one of wife's exceptions and dismissed the remaining exceptions. The court below determined that the marital estate to be $3,845,172.00 and awarded wife one-half share of the marital estate or $1,922,586.00. On October 20, 1992, husband filed a notice of appeal.[1] On November 16, 1992, the lower court directed husband to file a concise statement of matters complained of on appeal. Thereafter, husband timely filed his concise statement in accordance with Pa.R.A.P. 1925(b). On February 16, 1993, the lower court issued an opinion in support of the final decree dated September 23, 1992.

Appellant presents the following arguments for our review:

I. THE LOWER COURT ERRED IN DETERMINING THE VALUE OF AFA ENTERPRISES, INC. BY DISAL-

---

1. On October 22, 1992, husband filed an amended notice of appeal to reflect the correct case number.

LOWING THE 29% DISCOUNT TO THE BLUE BOOK VALUE OF 39 VEHICLES IDENTIFIED IN THE FOURTH CATEGORY OF VEHICLES AND VALUED BY HUSBAND AT $734,000.00.

II. THE LOWER COURT ERRED IN DETERMINING THE VALUE OF AFA ENTERPRISES, INC. BY DISALLOWING THE TRANSACTIONAL COST OF $174,933.00 RELATED TO THE SALE OF EQUIPMENT AND THE ENVIRONMENTAL LIABILITY OF $50,000.00 FOR REMOVAL OF FUEL STORAGE TANKS ON AFA PROPERTY.

III. THE LOWER COURT ERRED IN AWARDING THE WIFE 50% OF THE MARITAL PROPERTY IN LIGHT OF THE HUSBAND'S OVERWHELMING AND DISPROPORTIONATE CONTRIBUTION TOWARD THE ACQUISITION OF SUCH PROPERTY AND IN VIEW OF WIFE'S UNTIMELY DEATH SUBSEQUENT TO TRIAL.

IV. THE LOWER COURT ERRED IN FAILING TO CONSIDER THE TAX CONSEQUENCES OF THE PLAN OF DISTRIBUTION WHICH REQUIRES HUSBAND'S USE OF AFTER–TAX DOLLARS TO PAY TO WIFE'S ESTATE $1,000,000.00 PLUS INTEREST IN TEN (10) EQUAL ANNUAL INSTALLMENTS.

Appellant's Brief, "Table of Contents".

 In assessing whether the court below appropriately ascertained the equitable distribution of the marital property, we embrace the following analysis as articulated by our Court in *Murphy v. Murphy,* 410 Pa.Super. 146, 599 A.2d 647 (1991), *appeal denied,* 530 Pa. 633, 606 A.2d 902 (1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 196, 121 L.Ed.2d 139 (1992):

Our scope of review in equitable distribution matters is limited. *Lyons v. Lyons,* 401 Pa.Super. 271, 276, 585 A.2d 42, 45 (1991). It is well established that "absent an abuse of discretion on the part of the trial court, we will not reverse an award of equitable distribution." *Hill v. Hill,* 401 Pa.Super. 183, 185, 584 A.2d 1040, 1041 (1991), *citing Hovis v.*

*Hovis,* 518 Pa. 137, 541 A.2d 1378 (1988). When reviewing the record of the proceedings, we are guided by the fact that trial courts have broad equitable powers to effectuate justice and we will find an abuse of discretion only if the trial court has misapplied the law or failed to follow proper legal procedures. *Lyons v. Lyons, supra* [401 Pa.Super.] at 276, 585 A.2d at 45. The finder of fact is entitled to weigh the evidence presented and access its credibility. *Williamson v. Williamson,* 402 Pa.Super. 276, 286, 586 A.2d 967, 972 (1991). The fact finder is free to believe all, part, or none of the evidence and the Superior Court will not disturb the credibility determinations of the court below.

*See Viles v. Viles,* 416 Pa.Super. 95, 98, 610 A.2d 988, 990 (1992) (Court adopts *Murphy* analysis in its determination of whether trial court abused its discretion in equitable distribution matter).

■ Guided by the aforesaid law, we proceed to address the merits of appellant's contentions. First, appellant maintains that the lower court erred in adopting the Master's determination that the 39 vehicles identified in the fourth category of vehicles should be appraised at their "Blue Book" value rather than 29% below Blue Book value. Husband is the sole owner of stock in AFA Enterprises, Inc. (hereinafter "AFA"), a trucking and transportation company. In his appraisal of AFA's vehicles, the Master classified the vehicles into five categories. William Knoebel, AFA's Vice–President of Finance, testified as to the manner of how each category should be valued. With the exception of the fourth category, the Master adopted all of the valuations for the vehicles offered by Mr. Knoebel. Mr. Knoebel testified that the vehicles in the fourth category should be appraised 29% less than their value as reported in the Blue Book on the basis that AFA had auctioned some of its vehicles at this percentage below Blue Book value. The Master rejected Mr. Knoebel's testimony and concluded, "AFA's admitted limited experience in auctioning its vehicles does not, in the Master's opinion, replace the great volume of information accumulated in the publication of a recognized source as the Blue Book." Master's Report, p.

13. Therefore, the Master disallowed the 29% discount and found that the value of the vehicles in the fourth category should be appraised at their Blue Book value.

Husband contends, "[t]he Master's and lower court's adoption of the Blue Book value for the vehicles in category four was arbitrary, capricious and unsupported by the evidence." Appellant's Brief, p. 18. Husband asserts that he offered uncontradicted evidence of the value of the 39 vehicles, and that the lower court and the Master, were, thus, compelled to employ husband's appraisal of these vehicles. "The fact finder is free to believe all, part, or none of the evidence and the Superior Court will not disturb the credibility determinations of the court below." *Murphy,* 410 Pa.Super. at 158, 599 A.2d at 653. Here, the Master and the lower court found that the value established in the Blue Book to be more credible than the value offered by husband. We find no basis to disturb that finding and accordingly reject husband's argument that the lower court erred in determining the value of AFA by disallowing the 29% discount to the Blue Book value of 39 vehicles identified in the fourth category of vehicles. Moreover, even if we were to find husband's value of the vehicles to be uncontradicted, we note that the Master and the lower court adequately explained why husband's appraisal was rejected. *See Semasek v. Semasek,* 509 Pa. 282, 288, 502 A.2d 109, 112 (1985) (although a factfinder need not accept even the uncontradicted opinion of a valuation expert, trial court should offer explanation of its appraisal in the event that it's appraisal varies from the only value given in evidence).

■ Second, appellant argues that the lower court erred in not deducting from AFA's financial statements the transactional cost of $174,933.00 related to the sale of equipment and the environmental liability of $50,000.00 for the removal of fuel storage tanks on AFA property. The Master rejected an adjustment for the transactional cost of $174,933.00 on the following basis:

There is no evidence, however, that AFA plans to sell the properties. Thus, despite Mr. Wolk's [husband's expert witness] denials, the Master finds that the deduction of

theoretical transaction costs has the effect of valuing those assets at less than a fair market value. In addition, it would be inconsistent with the valuation of AFA as a going concern. Accordingly, such an adjustment is not appropriate.

Master's Report, pp. 14–15. Similarly, the Master disallowed an adjustment for the estimated cost of removal of fuel storage tanks:

First, Mr. Wolk testified that he would likely treat such expenditure as an operating expense. While such an expenditure would affect the company's future operating statement, it would not impact upon its September 9, 1989 (or December 31, 1989) balance sheet. Since the business is being valued on a recast book value basis, the possible incurrence of future operating expenses is not relevant.

Secondly, no evidence has been offered which would indicate that the presence of the tanks reduces the value of the property. Since the parties have stipulated to the fair market value of AFA's real estate, the Master concludes that any impact upon its value resulting from the presence of the tanks is already reflected in those appraisals.

Master's Report, p. 15. The lower court determined that the Master appropriately precluded an adjustment for the aforementioned costs. Trial Opinion 2/16/93, p. 2. After examining the record, and in view of the analysis provided by our Court in *Murphy, supra*, we find that the lower court did not abuse its discretion in its determination.

In evaluating whether the third contention raised by husband has any merit, we initially direct our attention to the following analysis as found by our Court in *Semasek v. Semasek*, 331 Pa.Super. 1, 11, 479 A.2d 1047, 1052 (1984); *rev'd on other grounds*, 509 Pa. 282, 502 A.2d 109 (1985):

[T]here is no simple formula by which to divide marital property. The method of distribution derives from the facts of the individual case. The list of factors of [3502(a) ] serves as a guideline for consideration, although the list is neither exhaustive nor specific as to the weight to be given the various factors. Thus, the court has flexibility of method

and concomitantly assumes responsibility in rendering its decisions.

See *Sergi v. Sergi*, 351 Pa.Super. 588, 599–600, 506 A.2d 928, 934 (1986) (while another court may choose to give different weight to the factors of [§ 3502(a) ], it is apparent that the trial court considered these factors in its determination).

■ Husband contends that the Master and lower court erred in awarding the wife 50% of the marital property. Husband suggests that the Master and the court below presupposed that a 50/50 split was necessarily the most equitable and thus committed an error of law. Appellant's Brief, pp. 32–33. *See Powell v. Powell*, 395 Pa.Super. 345, 577 A.2d 576 (1990) (trial court must not presume 50/50 division and must first analyze statutory list of factors to be considered in case requiring equitable distribution). Contrary to husband's assertion, we find that the Master did not presume a 50/50 split in his equitable distribution analysis. In his Report, the Master began his evaluation of equitable distribution by recognizing the factors prescribed in § 3502 of the Divorce Code. The Master then proceeded to scrutinize the facts of the case in relationship to those factors and only then concluded that a 50/50 division was the most equitable. Master's Report, pp. 42–46. We reject husband's contention that a presumption should be implied from the Master's conclusion.

Husband asserts that the Master and the lower court erred in weighing the factors set forth in § 3502 of the Divorce Code. The crux of husband's argument is that he is entitled to a greater share of the marital estate because of his employment efforts. The lower court was cognizant of the fact that husband worked strenuously to develop the success of AFA. However, the court below also recognized the substantial contribution of wife as homemaker. The parties had four children, one of whom, Elissa died at 16. The lower court found that the entire burden of child-rearing was placed on wife. In addition, the court below determined that wife contributed considerably to husband's professional career by entertaining his clients. Trial Opinion 2/16/93, p. 2. We find no abuse of discretion in the lower court's assessment of

factors in this case. *See Diamond v. Diamond,* 360 Pa.Super. 101, 112, 519 A.2d 1012, 1018 (1987), *appeal denied,* 516 Pa. 633, 533 A.2d 92 (1987) (in ascertaining equitable distribution Master must be permitted flexibility in order to do economic justice).

█ Husband also maintains that he should receive a greater share of the marital estate on the ground that wife is now deceased. The lower court fully considered husband's argument in its determination of equitable distribution. The court below found that wife was entitled to her equitable share during her lifetime, and, under the circumstances of the case, is entitled to pass her share to her estate. Trial Opinion 2/16/93, pp. 4–5. Here, the divorce decree was entered on July 24, 1987. From October 29, 1990, through January 16, 1991, the Master conducted six days of hearings to determine claims of equitable distribution, alimony and counsel fees. On December 6, 1991, the Master submitted his Report. On June 23, 1992, wife died unexpectedly. Upon review of the record, we conclude that the lower court did not abuse its discretion in rejecting husband's contention that he is entitled to a greater share of the marital estate because of wife's death. *See Pastuszek v. Pastuszek,* 346 Pa.Super. 416, 499 A.2d 1069 (1985), *appeal denied* (1986), (once a divorce decree has been entered, the right of the spouse to the distribution of marital property and other economic claims where those matters have been properly put in issue before the death of the spouse is vested). Having concluded that the issues raised in husband's third argument do not warrant reversal, we address husband's final contention.

█ Husband's fourth argument challenges the lower court's determination of the tax and interest consequences arising from the plan of distribution. Initially, we note that the Master proposed a distribution scheme which required a payment from husband to wife of $1,482,000.00 over a fourteen-month period. Husband filed an exception to the Master's plan of distribution. Husband requested the following distribution scheme:

> Husband suggests that he make a lump sum distribution to Wife in an amount sufficient to reduce his outstanding balance to $1,000,000. The $1,000,000 shall then be paid in equal installments at a rate of 6% on the outstanding balance ... She will be receiving principal payments of $100,000 per year plus interest in the outstanding balance ...

Appellant's Exceptions to Master's Report, p. 46. The lower court sustained husband's exception and provided the following distribution scheme which is similar to husband's requested plan:

> In order to reduce the economic hardships on Husband and ensure an equitable distribution of the marital estate, the payment scheme shall be carried out over a period of ten (10) years. Husband shall make a lump sum distribution in the amount of $379,255.00 to Wife within sixty (60) days of this Decree. This will reduce Husband's outstanding balance to $1,000,000.00. The outstanding balance shall then be paid in ten equal annual installments, with an interest rate of prime plus one percent (1%) on any outstanding balance.

Memorandum of Final Decree 9/23/92, pp. 2–3. Husband herein contends that the lower court failed to consider the tax and interest ramifications in its determination of equitable distribution. Husband completely ignores the fact that the court below adopted a distribution scheme nearly identical to the plan requested by husband. We find that the lower court thoroughly assessed the economic consequences of the distribution scheme, and we conclude that the record fails to reflect an abuse of discretion on the part of the trial court.

The final decree of September 23, 1992 is affirmed.