J-S70031-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MICHAEL MARKANTONIS, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| NORMA GABRIELA MARKANTONIS, | : | |
| | : | |
| Appellee | : | No. 1200 EDA 2014 |

Appeal from the Order Entered March 27, 2014
in the Court of Common Pleas of Monroe County
Civil Division at No(s): 10451 CV 2011 and 1381 DR 2011

| | | |
|---|---|---|
| MICHAEL MARKANTONIS, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| NORMA GABRIELA MARKANTONIS, | : | |
| | : | |
| Appellant | : | No. 1406 EDA 2014 |

Appeal from the Order Entered March 27, 2014
in the Court of Common Pleas of Monroe County
Civil Division at No(s): 10451 CV 2011 and 1381 DR 2011

BEFORE:  LAZARUS, MUNDY, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED DECEMBER 02, 2014**

Michael Markantonis (Husband) and Norma Gabriela Markantonis (Wife) both appeal from the order entered by the trial court, which granted a final decree of divorce and granted in part and denied in part exceptions filed by both Husband and Wife to the Master's recommendation. Upon review,

* Retired Senior Judge assigned to the Superior Court.

we affirm in part, vacate in part, and remand for a new order consistent with this memorandum.

Husband and Wife were married on March 12, 1998 in New Rochelle, New York. In 1999, while residing in New York, Husband retained the services of Attorney Bruce Mandia.[1] Mandia drafted a post-nuptial agreement (the Agreement) for Husband and Wife, which contained the following relevant provisions.

> WHEREAS, the parties hereto each know that under the Domestic Relations Law of the State of New York upon the lawful dissolution of the marriage by divorce or otherwise, each may have certain rights to "marital property", to "separate property", to "maintenance" and in some circumstances a "distributive award" as defined in the State of New York equitable Distribution Divorce Law of June 19, 1980, as amended, and each wishes to now settle all of these matters prior to marriage and prior to a potential dissolution of the planned marriage,[2] and

> ***

> 5) That in the event of a divorce, separation or any marital conflict between the parties, each party shall pay for his or her own attorneys' fees, costs and disbursements and expenses of litigation from his or her own separate funds.

> 6) In the event of a divorce or the execution of a separation agreement, the Marital property of the parties shall be divided as follows; 80% to the husband and 20% to the wife.

> ***

> 8) [Husband] has been represented by Bruce C. Mandia. [Wife] has had an opportunity to retain an attorney of her choice and

---

[1] Mandia was licensed to practice law at the time he was retained. In 2004, Mandia was disbarred.

[2] The parties were already legally married at the time they entered into this agreement.

has had ample opportunity to retain said attorney, but has chosen not to retain an attorney….

Postnuptial Agreement, 9/28/1999 (footnote added).

At some point thereafter, Husband and Wife moved to Pennsylvania, and later separated. On December 5, 2011, Husband filed a complaint for divorce, which was reinstated in January 2012. On February 6, 2013, Wife filed a petition for special relief asking the trial court to set aside the Agreement because: she does not speak English; the Agreement was never explained to her; and Mandia has since been disbarred. She asked for counsel fees, as well as for the trial court to declare the Agreement invalid.

In response, Husband asserted that Wife "feigns her lack of understanding of English when it becomes convenient for her when in fact she does understand and can converse very well." Answer to Petition for Special Relief, 2/20/2013, at ¶ 7. Husband also asserted that the Agreement was explained thoroughly to Wife by Mandia in both English and Spanish.

On April 10, 2013, after a hearing, the trial court entered an order permitting the record to remain open in order to review a copy of Mandia's deposition.[3] Wife did not file that deposition in the time prescribed by the trial court.[4] After reviewing the briefs from both parties, the trial court concluded that "Wife has failed to meet her burden of rebutting the validity

---

[3] A transcript of this hearing was never ordered or filed.

[4] The record shows that the deposition was not filed until June 4, 2013.

of the Post-Nuptial Agreement or proving any cognizable basis to set aside the Agreement." Order, 5/24/2013. Thus, Wife's petition was denied.

A hearing on all of the issues related to this divorce was held before Master Robert C. Lear on June 4, 2013. Both Husband and Wife testified. On August 2, 2013, the Master filed his report, concluding that Husband was entitled to 80% of the marital property and Wife was entitled to 20% per the Agreement. The Master totaled the marital assets of the parties to be $125,854, which would have provided $25,170.80 to Wife and $100,683.20 to Husband. However, the Master concluded that Wife had a retirement account from Mt. Airy Lodge of $900, so he subtracted $720 (or 80%) from Wife's distribution. Additionally, Husband owed Wife $3,500 for money she lent him to purchase a backhoe. Thus, the Master added $3,500 to Wife's distribution, which resulted in a total amount of $27,950.80 to Wife.

Based upon these valuations, the Master awarded Wife a rental property located at 735 Gilbert Road,[5] the couple's 2006 Toyota Prius,[6] as well as $10,000 from the sale of the couple's 2008 Honda Civic. Wife was also awarded the amount in the Wells Fargo bank account ($1,179), the

---

[5] The deed to the 735 Gilbert Road rental property is in both parties' names, but the mortgage is in Wife's name alone. Furthermore, the Master found that property was valued at $180,000, but encumbered by a mortgage of $210,000; so the Master determined the total value for the purposes of distribution was zero.

[6] The Master valued this vehicle at $11,200.

1996 Jeep Cherokee,[7] and the $180 from her retirement account. Based upon the debt of the parties, which consisted of credit card debt all in Husband's name, the Master determined that Wife owed 10%, or $2,316, of that debt. Husband received everything else, including the former marital residence located at 732 Gilbert Road, valued at $83,388,[8] as well as a number of vehicles.

Furthermore, pursuant to the Agreement, the Master did not award counsel fees to either party. The Master also concluded that the Agreement did not address the issue of alimony; thus, after considering the factors set forth in 23 Pa.C.S. § 3701(b), the Master awarded Wife alimony of $600 per month for 30 months.

On August 16, 2013, Wife filed exceptions to the Master's recommendation. Wife contended, in relevant part, that the Master erred in accepting the appraisal value for the former marital residence and reducing it by 3.5%; in valuing the Gilbert Road rental property at zero; in failing to credit Wife for delinquent mortgage payments on that property; in assessing Wife any value to the Mt. Airy Lodge retirement account; in failing to award Wife credit for the marital funds Husband used to pay attorneys' fees; in

---

[7] The Master valued this vehicle at $3,325.

[8] This home had an appraised value of $300,000, encumbered by a mortgage of $206,112, resulting in a value of $93,888. The Master reduced the appraisal amount by 3.5% to account for the cost of a potential sale, which resulted in a total value of $83,388. Master's Report, 8/2/2013, at 4.

failing to award adequate alimony for a sufficient amount of time; and, in failing to set aside the Agreement.

On August 21, 2013, Husband filed counter-exceptions. He contended that the Master erred in awarding any alimony and in awarding Wife the Gilbert Road rental property. On March 27, 2014, the trial court entered an order, which granted two of Wife's exceptions. First, it concluded that Wife's alimony should be increased from $600 per month to $2,700 per month, and the duration increased from 30 months to 36 months. Additionally, the trial court granted Wife an additional $1,500 because Husband utilized marital funds to pay his attorney. Both of Husband's exceptions were denied.

Husband timely filed a notice of appeal, and Wife timely filed a cross-appeal. Both parties were ordered to file concise statements of errors complained of on appeal, and both complied.[9]

We consider first Husband's contention that the Agreement does not permit an award of alimony. Husband's Brief at 10-12. Specifically, Husband acknowledges that the Agreement did not mention the word "alimony," but

---

[9] In addressing the merits of the issues presented, we consider Husband's contention that Wife's argument that the trial court erred in denying her petition to set aside the Agreement is waived. Husband's Brief at 14. We observe that Wife's brief does not make any reference to such challenge. However, even if it did, we agree with both Husband and the trial court that Wife's failure to procure the transcript of testimony from this hearing results in waiver of the issue. Trial Court Opinion, 6/19/2014, at 2-8 (unnumbered). *See* Pa.R.A.P. 1911(a) ("The appellant shall request any transcript required under this chapter in the manner and make any necessary payment or deposit therefor[.]").

- 6 -

argues that because it "did include the term 'maintenance' (the New York State Divorce Law Equivalent)," Wife had specifically waived any right to alimony. *Id*. at 11. The trial court concluded that the Agreement "failed to address the issue of alimony or maintenance." Trial Court Opinion, 7/8/2014, at 1-2.

"[P]ost-nuptial agreements are contracts and are governed by contract law…. Moreover, a court's order upholding the agreement in divorce proceedings is subject to an abuse of discretion or error of law standard of review." *Paroly v. Paroly*, 876 A.2d 1061, 1063 (Pa. Super. 2005).

> The paramount goal of contract interpretation is to ascertain and give effect to the parties' intent. To accomplish this goal, each and every part of [the contract] must be taken into consideration and given effect, if possible, and the intention of the parties must be ascertained from the entire instrument. In order to ascertain the intention of the parties, the court may take into consideration the surrounding circumstances, the situation of the parties, the objects they apparently have in view, and the nature of the subject-matter of the agreement. The court will adopt an interpretation that is most reasonable and probable bearing in mind the objects which the parties intended to accomplish through the agreement.

*Laudig v. Laudig*, 624 A.2d 651, 653 (Pa. Super. 1993).

At the Master's hearing, Husband testified that it was his understanding that based upon the terms of the Agreement, he would not be responsible for spousal support or alimony. N.T., 6/4/2013, at 65. Wife testified that she did not know what she was signing when she signed the Agreement. *Id*. at 137.

The Master considered this issue, and concluded the following.

[F]or some inexplicable reason, that while maintenance was referred to in the second "Whereas" paragraph (maintenance being the term for Alimony in the New York Equitable Distribution Divorce Law) a specific waiver of maintenance was never included in the Agreement even though there were specific waivers of distributive award (*sic*), separate property, and an Agreement to the 80/20 allocation of marital property.

Master's Report, 8/2/2013, at 8.

The trial court agreed with the Master's interpretation of the contract, and we find no error of law or abuse of discretion in that conclusion. Here, under the plain language of the Agreement, which was drafted by Husband and his attorney, Wife did not waive her right to alimony. Thus, we agree with the trial court that Wife was entitled to an award of alimony.

Husband further argues that, even if Wife were entitled to alimony, the trial court erred when it increased the amount from $600 per month to $2,700 per month, and the duration from 30 months to 36 months, because such amount is more than Husband can afford to pay. Husband's Brief at 11.

Our scope of review for purposes of evaluating a trial court's award of alimony is limited to a determination of whether the trial court abused its discretion. An abuse of discretion exists when the judgment of the trial court is manifestly unreasonable or is the result of prejudice, bias or ill-will. While it is not an appellate court's duty to create the record or assess credibility, we must nevertheless examine the existing record to ascertain whether sufficient facts are present to support the trial court's order. If sufficient evidence exists in the record to substantiate the trial court's action, and the trial court has properly applied accurate case law to the relevant facts, then we must affirm. Also, the purpose of alimony is not to reward one party and punish another, but rather to ensure that the reasonable needs of the person who is unable to support himself/herself through appropriate employment are met.

*Jayne v. Jayne*, 663 A.2d 169, 174 (Pa. Super. 1995).

The trial court evaluated the issue of alimony as follows.

[The trial court] reviewed the Master's award of alimony and under the circumstances, [it] found the award to be inadequate and limited in duration. [Its] determination was based on the factors set forth in 23 Pa.C.S.A. § 3701(b). Specifically, [the trial court] determined [it was appropriate] given Wife's age, 54, and her limited work history in conjunction with Husband's ability to do handyman jobs and attract several commercial clients for the buildings located on his property. Wife worked at lower paying jobs in which there is limited room for advancement. The parties lived a modest life and Wife is unable to pay her bills, including health coverage, with her wages and the small amount of alimony ordered by the Master. Wife calculated that she would require $2,700 per month to sustain her standard of living. [The trial court] considered Wife's needs and her contribution to the marriage. Wife was working outside of the home and contributing as a homemaker.

After reviewing the evidence and the factors set forth in [section] 3701(b), [the trial court] agreed with Wife that she lacked sufficient property and employment opportunities to continue to live at the standard established during the marriage. Accordingly, [the trial court] ordered alimony in the amount of $2,700 for a period of 36 months. We believe that this award achieves economic justice while allowing Wife to become more self-sufficient.

Trial Court Opinion, 7/8/2014, at 1-2.

The record supports the trial court's determination. Wife testified she had very little money to live on, and it would cost her $2,745 per month to maintain her standard of living. N.T., 6/4/2013, at 141. Husband acknowledged that Wife has not worked in about a year, and even before that, her employment was both short-term and sporadic. *Id*. at 23.

Moreover, Husband owns, manages, and maintains several rental properties, and is able to earn a living doing odd jobs as a handyman. In fact, Wife presented Husband's business card encouraging customers to "Call Mike" who is a "Super Handyman" and does multiple jobs including electrical, plumbing, painting, concrete work, light excavation, carpentry, installation, deck repairs, landscaping, land leveling, snow plowing, and welding. *See* Wife's Exhibit 11. Thus, based on the testimony and evidence, the trial court did not abuse its discretion in increasing Wife's alimony so that she has the ability to maintain her standard of living while trying to secure employment.

We next consider whether the trial court erred in awarding Wife $1,500 in attorneys' fees. Specifically, Husband contends that based on the Agreement, Wife was not entitled to attorneys' fees. Husband's Brief at 10. Wife responds that the trial court found that Husband used marital funds to pay for his attorneys' fees, and this was the trial court's attempt to reimburse Wife. Wife's Brief at 19.

The Agreement specifically provided that each party is responsible for his or her own attorneys' fees. However, Husband testified that he paid $1,500 to his attorney from the parties' joint Wells Fargo bank account, which was marital property. N.T., 6/4/2013, at 99. Accordingly, based on the Agreement, Wife was entitled to 20% of this amount. Therefore, we

vacate the portion of the order which credits Wife $1,500, and credit her with $300 instead.

Next, we turn to the issues related to equitable distribution: the former marital residence located at 732 Gilbert Road, the rental property located at 735 Gilbert Road, and the $900 retirement account. We consider these issues mindful of the following.

> A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an abuse of discretion unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

**Reber v. Reiss**, 42 A.3d 1131, 1134 (Pa. Super. 2012) (quoting **Biese v. Biese**, 979 A.2d 892, 895 (Pa. Super. 2009)).

We set forth a summary of the applicable law.

> "In making its decision regarding equitable distribution, the trial court must consider at least the eleven factors enumerated in 23 Pa.C.S.A. § 3502(a) [hereinafter "statutory factors"]." **Isralsky** [**v. Isralsky**, 824 A.2d 1178, 1191 (Pa. Super. 2003)]. As this Court summarized in **Isralsky**:
>
> > [T]here is no simple formula by which to divide marital property. The method of distribution derives

- 11 -

> from the facts of the individual case. The list of factors [in the Code] serves as a guideline for consideration, although the list is neither exhaustive nor specific as to the weight to be given the various factors. Thus, the court has flexibility of method and concomitantly assumes responsibility in rendering its decisions.
>
> *Id.* (quoting *Fonzi v. Fonzi*, 430 Pa.Super. 95, 633 A.2d 634, 638 (1993)) (brackets in the original).

*Wang v. Feng*, 888 A.2d 882, 888 (Pa. Super. 2005).

First, Wife contends the trial court erred in deducting 3.5% from the value of the former marital residence. Wife's Brief at 20. Husband responds that the Master and trial court correctly reduced the amount because Husband testified he intended to sell the property. Husband's Brief at 14. However, to support his argument, Husband cites to a portion of the testimony where he talked about selling the rental property, not the former marital residence.[10] *See also* Trial Court Opinion, 3/27/2014, at 3 (unnumbered) ("Husband testified that he expects to sell the residence in the future."). In fact, Husband testified specifically that he did not intend to sell the marital residence at 732 Gilbert Road. N.T., 6/4/2013, at 25.

"Adjustment in the value of a residence for expenses associated with a contemplated sale may be an appropriate consideration in some equitable distribution cases." *Zeigler v. Zeigler*, 530 A.2d 445, 550 (Pa. Super. 1987). However, where, as here, the trial court relied upon an incorrect

---

[10] The portion of the transcript at page 70 dealt with the rental property at 735 Gilbert Road.

assumption to reach this conclusion, we hold that it was an abuse of discretion to deduct the 3.5%. Accordingly, we vacate that portion of the order, and remand to the trial court for recalculation.

Husband also argues that the trial court erred in awarding the 735 Gilbert Road rental property to Wife, and further erred in assigning it a zero value. He contends that he has done all maintenance and upkeep for the property, and Wife does not possess those skills herself nor can she afford to hire someone to do so. Husband's Brief at 12-13. Alternatively, Wife argues that she should be able to keep the property, but Husband should be allocated some of the mortgage debt for that property. Wife's Brief at 17-19.

> Regarding the valuation of property to be distributed,
>
> the court is free to accept all, part or none of the evidence as to the true and correct value of the property. Where the evidence offered by one party is uncontradicted, the court may adopt this value even though the resulting valuation would have been different if more accurate and complete evidence had been presented. A trial court does not abuse its discretion in adopting the only valuation submitted by the parties.

*Baker v. Baker*, 861 A.2d 298, 302 (Pa. Super. 2004) (citations and quotations marks omitted).

With respect to this rental property, there is no dispute that it is valued at $180,000 and the mortgage amount is $210,000. The trial court concluded that "Wife provides no legal authority for her proposition that she is entitled to anything except a zero net distribution for this asset." Trial

Court Opinion, 3/27/2014, at 4 (unnumbered). However, Wife argues that this "asset" is actually a "debt" that was assigned to her. Wife's Brief at 18. Husband counters that "[t]his was an asset that Wife sought during litigation and cannot now complain about the financial burden received having prior knowledge that the property possessed no equity." Husband's Brief at 12.

Furthermore, at the time of the Master's hearing, the mortgage was two-and-a-half months delinquent because Husband, who traditionally paid all mortgages, chose to pay the mortgage on the former marital residence rather than the mortgage on the rental property. Additionally, a tenant has been residing in the property for several years on a month-to-month lease. Husband testified that he managed the property and did all repairs and maintenance for it. On the other hand, Wife testified that Husband has purposely let this property deteriorate during the course of the pending divorce litigation. Moreover, while the deed is in both parties' names, the mortgage is in Wife's name alone. Additionally, due to her increase in alimony, Wife "will now have the ability to pay the mortgage, taxes, and utilities for the rental property." Trial Court Opinion, 3/27/2014, at 9 (unnumbered).

Because the property has an actual value of negative $30,000, we conclude that the trial court erred in assigning a zero-value to the property. Wife is entitled to some credit for this $30,000 difference, as well as consideration of the delinquency of the mortgage, some of which could

possibly be set off by Husband's maintenance and work put into the property. Accordingly, we vacate this portion of the trial court order and remand for further proceedings.

Finally, we consider Wife's Mt. Airy Lodge retirement account. Wife argues that there was no basis for a finding that Wife actually had a retirement account from her one year of employment at the Mt. Airy Lodge. Wife's Brief at 19-20.

The trial court concluded the following.

> Husband testified that he made discovery requests about Wife's 401(k) from Mt. Airy Lodge, but never received any information. He further testified that Wife mentioned it was approximately $900. Wife did not present any evidence to the contrary and we believe the Master correctly determined that the Mt. Airy Lodge retirement account was marital property.

Trial Court Opinion, 6/19/2014, at 2 (unnumbered).

The trial court's assessment is supported by the record. Husband testified that "I think [Wife] told me one time" that the value of the account was $900. N.T., 6/4/2013, at 68. Wife did not present any testimony with respect to this account, and the Master believed Husband's testimony. Accordingly, there was no error or abuse of discretion by including this retirement account as an asset.

Based on the foregoing, we affirm the order in part, vacate in part, and remand for a new order consistent with this memorandum.

Order affirmed in part and vacated in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/2/2014