591 A.2d 720

**Jill HAMILTON, Appellee,**

v.

**Chris HAMILTON, Appellant.**

Superior Court of Pennsylvania.

Argued March 20, 1991.

Filed May 20, 1991.

534

Donald C. Feniello, Washington, for appellant.

Robert N. Clarke, Washington, for appellee.

Before ROWLEY, President Judge, and WIEAND and HOFFMAN, JJ.

WIEAND, Judge:

This matter is before the Court on an appeal taken from an order of spousal support in the amount of three hundred ($300) dollars per month. In entering the order, the hearing court refused to enforce, without specific reason, an ante-nuptial agreement by the terms of which the wife-appellee expressly had waived the right to spousal support. Appellant-husband contends on appeal that this was error. We agree and reverse.

Chris Hamilton and Jill Hamilton were married on January 28, 1989. Jill was then eighteen (18) years of age and unemployed. She was also three months pregnant. Chris was employed on a family owned farm. Shortly before the wedding, while both were represented by counsel, Jill and Chris executed an antenuptial agreement which provided, in part, as follows:

> In the event that the parties separate from each other or their marriage terminates for any reason or by any means (other than by the death of either party), whether pursuant to a decree of divorce, judgment for dissolution of marriage, a decree of separate maintenance, a judgment for legal separation, order or decree of support, decree of temporary alimony or maintenance, a decree of annulment, a judgment for invalidity of marriage, a written separation agreement, a written property settlement agreement or otherwise (regardless of which party initiates such separation or termination), each of the parties hereby waives all rights he or she may have to and agrees to request that a court make no further provision for separate maintenance, suit money, support, alimony or maintenance (temporary or permanent, whether in gross, lump sum or by periodic payment) or any other form of payment, or any award or settlement of property or income of the other party (including property or income which, except for this agreement, would be deemed to be marital property, community property or quasi-community property under the applicable laws of any jurisdiction) in connection with any such separation or termination or dissolution of their marriage, including legal fees, accounting fees or other expenses of the other party relating to such separation or termination or dissolution.

A child, Chelsea, was born July 18, 1989. On April 9, 1990, however, Chris and Jill separated. A petition for spousal and child support was filed on April 10, 1990, and the same was heard by a domestic relations officer on May 21, 1990. This officer made a provisional determination

that Chris should pay the sum of two hundred sixty-four ($264) dollars per month for the support of his child, but he also recommended that the claim for spousal support be denied. Jill appealed and requested a hearing, which was held by the court on August 14, 1990. The hearing court, without specific reason, held that the antenuptial waiver of spousal support was unenforceable. Therefore, an order was entered which directed Chris to pay the sum of three hundred ($300) dollars per month for the support of his wife and the sum of two hundred ($200) dollars per month for the support of his child. Chris appealed. He does not dispute the existence of an obligation to provide support for his child but denies liability for spousal support.

Although the trial court has not stated specifically its reasons for refusing to enforce the provisions of the antenuptial agreement, the arguments made by the parties in this Court assume that the basis therefor was duress.

Duress has been defined by the Supreme Court in *Carrier v. William Penn Broadcasting Co.*, 426 Pa. 427, 233 A.2d 519 (1967), as

that degree of restraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity or apprehension to overcome the mind of a person of ordinary firmness: [citing cases]. The quality of firmness is assumed to exist in every person competent to contract, unless it appears that by reason of old age or other sufficient cause he is weak or infirm: [citing a case]. Where persons deal with each other on equal terms and at arm's length, there is a presumption that the person alleging duress possesses ordinary firmness: [citing a case]. Moreover, in the absence of threats of actual bodily harm there can be no duress where the contracting party is free to consult with counsel: [citing cases].

*Id.*, 426 Pa. at 431, 233 A.2d at 521, quoting *Smith v. Lenchner*, 204 Pa.Super. 500, 504, 205 A.2d 626, 628 (1964). See also: *Bata v. Central–Penn Nat. Bank of Philadel-*

*phia,* 423 Pa. 373, 224 A.2d 174 (1966), *cert. denied,* 386 U.S. 1007, 87 S.Ct. 1348, 18 L.Ed.2d 433 (1967).

■■■■ The record is clear that there was neither force nor threat of force used to induce Jill to sign the antenuptial agreement in this case. She was told, however, that without the agreement there would be no wedding. It is also true that she was pregnant, unemployed, and probably frightened. Nevertheless, she was represented by counsel, who was available to advise and did, in fact, advise her not to sign the agreement. Jill rejected this advice and signed the agreement. It seems clear, therefore, that she did not sign the agreement under duress. Where a party has been free to consult counsel before signing an agreement, the courts have uniformly rejected duress as a defense to the agreement. See: *Bata v. Central–Penn Nat. Bank of Philadelphia, supra* at 381, 224 A.2d at 180; *Young v. Pileggi,* 309 Pa.Super. 565, 571, 455 A.2d 1228, 1231 (1983). See also: *Union Nat. Bank and Trust Co. v. Heffernan,* 437 Pa. 492, 493, 263 A.2d 349, 349–350 (1970).

Appellee argues that the agreement was unenforceable because it did not contain reasonable provision for her.[1] She relies upon Supreme Court decisions in *Estate of Geyer,* 516 Pa. 492, 533 A.2d 423 (1987) (plurality opinion), and *Hillegass Estate,* 431 Pa. 144, 244 A.2d 672 (1968), which held that a prenuptial agreement would be upheld if it either made a reasonable provision for the spouse or was entered after a full and fair disclosure of financial status. More recently, however, the Supreme Court has rejected this approach and has held, in *Simeone v. Simeone,* 525 Pa. 392, 581 A.2d 162 (1990), that "[p]renuptial agreements are contracts, and, as such, should be evaluated under the same criteria as are applicable to other types of contracts." *Simeone v. Simeone, supra,* 525 Pa. at 400, 581 A.2d at 165. See also: *Raiken v. Mellon,* 399 Pa.Super. 192, 196, 582 A.2d 11, 13 (1990). Absent fraud, misrepresentation, or

---

1. Prior to signing the agreement, Jill was furnished with copies of Chris's tax returns for at least five years and also copies of his bank records. She does not contend on appeal that a full disclosure was not made.

duress, spouses are bound by the terms of their agreements. *Simeone v. Simeone, supra,* 525 Pa. at 399, 581 A.2d at 165. The Court reasoned:

> There is no longer validity in the implicit presumption that supplied the basis for *Geyer* and similar earlier decisions. Such decisions rested upon a belief that spouses are of unequal status and that women are not knowledgeable enough to understand the nature of contracts that they enter. Society has advanced, however, to the point where women are no longer regarded as the "weaker" party in marriage, or in society generally. Indeed, the stereotype that women serve as homemakers while men work as breadwinners is no longer viable. Quite often today both spouses are income earners. Nor is there viability in the presumption that women are uninformed, uneducated, and readily subjected to unfair advantage in marital agreements. Indeed, women nowadays quite often have substantial education, financial awareness, income, and assets.

*Id.,* 525 Pa. at 399, 581 A.2d at 165. "If parties viewed an agreement as reasonable at the time of its inception, as evidenced by their having signed the agreement, they should be foreclosed from later trying to evade its terms by asserting that it was not in fact reasonable." *Id.,* 525 Pa. at 401, 581 A.2d at 166.

We are constrained to conclude for the foregoing reasons that the trial court erred when it refused to enforce the provision of the antenuptial agreement by which appellee had waived her right to spousal support. That portion of the court's order, therefore, will be reversed and set aside.

The order directing appellant to pay spousal support is reversed and set aside.