Filed 1/16/14  Estate of Wang CA4/2

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

Estate of YEN WANG, Deceased.

HUI CHUN LIU,

      Petitioner and Appellant,

v.

PETER JOHN WANG,

      Objector and Respondent.

E055476

(Super.Ct.No. PSP1100101)

OPINION

APPEAL from the Superior Court of Riverside County.  James A. Cox, Judge.

Affirmed.

Kenner Law Group, PLC and Jason J.L. Yang for Petitioner and Appellant.

Jones Day, Erica L. Reilley, Charlotte S. Wasserstein; Law Office of Sandy J. Chun and Sandy J. Chun for Objector and Respondent.

1

# I

## INTRODUCTION[1]

Appellant Hui Chun Liu (Liu) appeals judgments entered following two bifurcated bench trials in a contested probate matter involving the Estate of Yen Wang (decedent). Liu challenges the trial court finding that Liu voluntarily executed a valid and enforceable prenuptial agreement, which precluded her from receiving any family allowance or estate assets, other than $100,000, agreed to under the prenuptial agreement and the decedent's will.

Liu contends the prenuptial agreement is invalid and unenforceable because she did not voluntarily sign it. Liu argues she signed the prenuptial agreement under duress because the attorney who represented her was retained and paid by decedent. Therefore her attorney had an undisclosed conflict of interest, which Liu did not waive. We conclude Liu has not met her burden of proving she did not voluntarily execute the prenuptial agreement because her attorney had a conflict of interest. We therefore affirm the judgment.

---

[1] Liu's request for judicial notice, filed on April 25, 2013, requesting judicial notice of various Pennsylvania cases, statutes and rules, is granted, as to exhibits 1 through 6, and exhibits 8 and 9 (Evid. Code, §§ 451, 459, subd. (a)). Judicial notice is denied as to exhibit 7, on the ground the document is unrelated to the instant action, does not involve the parties in this case, and is an unpublished memorandum decision, which is not citable authority under Pennsylvania law (42 Pa.C.S.A., § 65.37).

## II

## FACTS AND PROCEDURAL BACKGROUND

The decedent and Liu met in China. Liu moved to the United States to be with decedent a few months before Liu and decedent married in Pennsylvania. Liu lived in decedent's home in Pennsylvania for at least two months before she and decedent married on February 22, 2006. She knew, before marrying decedent, that he was a medical doctor and had a nice home and car, and a maid. Decedent was 77 years old and had been living in Pennsylvania for nearly 50 years. Liu was approximately 60. Both had been married before and their spouses had died. Decedent's previous wife died in 2000. Decedent had two adult children, Peter Wang (Peter) and Kathryn Wang Polito (Kathryn). Peter is the administrator of decedent's estate and executor of decedent's will.

Before decedent and Liu married, decedent's attorney in Philadelphia, F. Scott Donahue, drafted a prenuptial agreement for decedent. On the day decedent and Liu were married, before the wedding, decedent told Liu she needed to meet with attorney Zhen Jin to sign a document. Liu did not select Jin or pay his attorney's fees. Decedent waited for Liu outside Jin's office while Liu met with Jin alone and discussed the prenuptial agreement. Jin spoke in Mandarin Chinese, Liu's native tongue. While meeting with Jin, Liu had the opportunity to ask him questions about the prenuptial agreement. The meeting lasted an hour.

Liu testified that she did not bother to review the prenuptial agreement before signing it because she did not care much about it. Liu believed decedent would not lie to

her about the prenuptial agreement.  Liu did not believe decedent would have been unhappy if she did not sign the prenuptial agreement or would have refused to marry her or ask her to return to China.  She also did not think Jin lied to her about the prenuptial agreement or tricked her into signing it.  Liu testified that no one pressured her into signing the prenuptial agreement.

The prenuptial agreement, dated February 22, 2006, states that, "Prior to signing this Agreement, each party has had the opportunity to consult with an attorney of the party's choice.  Husband is represented by F. Scott Donahue, Esquire.  Wife is represented by Zhen H. Jin, Esquire."  The prenuptial agreement further states, "Both parties acknowledge that they are knowingly and voluntarily signing this Agreement."  Attached to the prenuptial agreement were two financial disclosure documents entitled, "Net Worth Statement" and "Asset Classification Breakdown," showing decedent had over $12 million in assets.  Liu and decedent agreed in the prenuptial agreement that they expressly waived "the right to investigate the assets of the other.  To the extent that no investigation has taken place, the lack of investigation was the voluntary choice of the party and was not due to any duress or pressure imposed by the other party or the lack of sufficient time within which to conduct such investigation."

Under the prenuptial agreement, if either spouse died, the decedent spouse's property would be distributed according to that spouse's will.  The prenuptial agreement specifies that, if decedent predeceased Liu, she would receive $100,000 from his estate.  Liu and decedent agreed in the prenuptial agreement that "each party waives,

4

relinquishes, and gives up his or her rights in the estate of the other, including the right of election or any other statutory right"; they each "specifically waives, relinquishes, renounces, and gives up any claim that they might otherwise have to the separate property of the other"; and "any such waiver of their rights [shall] be complete, unequivocal, and absolutely [*sic*], except as otherwise provided in this Agreement."

Liu and decedent signed both English and Chinese versions of the prenuptial agreement, dated February 22, 2006, the day of their wedding. Peter testified the Chinese version of the prenuptial agreement was prepared at least one week before the wedding. Liu and decedent were married in Philadelphia on February 22, 2006.

In 2007, decedent executed a pour-over will, first codicil, and deed of trust (collectively, the will), prepared by decedent's attorney, Donahue. Liu was a witness on the first codicil. Peter was named as executor and is a beneficiary of the will. Consistent with the prenuptial agreement, decedent's will bequeathed $100,000 to Liu. The remainder of decedent's estate assets were to be deposited into trusts for the health and education of decedent's two children, Peter and Kathryn, and their heirs.

In 2008, Liu and decedent became permanent residents of California, although decedent continued to maintain a residence and other property in Pennsylvania.

On February 2, 2011, decedent suffered a massive heart attack and was placed in an intensive care unit at hospital in Palm Springs. Decedent died on February 25, 2011.

On March 10, 2011, Peter filed a petition and, later, an amended petition for probate, requesting decedent's will be admitted to probate, with probate of the will and

5

appointment of Peter as the personal representative of decedent's estate, in accordance with the will. Liu filed a competing probate petition seeking admission to probate of an additional will and codicil, dated January 12, 2011, and February 23, 2011, respectively. The January 12, 2011 will stated decedent wished to disinherit Peter and give his entire estate to Liu and Wei Hong Chen, a distant relative and decedent's care giver and maid. The February 2011 codicil stated that decedent wished to give his entire estate to Liu and Chen and to disinherit Peter and Kathryn because "they showed no filial obedience to me." The codicil further stated that Liu and Chen were to handle all of decedent's affairs, rather than Peter, who is an attorney.

In May 2011, Liu filed an ex parte application and petition for a $25,000 family allowance. She later filed a supplemental application and petition. Liu claimed she was in poor health, was unemployable, had no source of income, other than the decedent's social security, and needed the assistance of Chen, as her care giver. Because determination of Liu's request for a family allowance required a finding the prenuptial agreement was invalid and unenforceable, the court first conducted a trial to determine the validity of the prenuptial agreement under Pennsylvania law. During the four-day trial in October 2011, Liu and Peter stipulated that Liu signed the English version of the prenuptial agreement. Although Liu initially denied she signed the Chinese version of the prenuptial agreement, Liu testified that the signature on the Chinese version of the prenuptial agreement could have been her signature, and a handwriting expert testified that, in his opinion, it was her signature.

During closing argument, Liu's attorney argued Liu was entitled to a family allowance under California law. She also argued that under Pennsylvania law, the prenuptial agreement was invalid since Jin only presented Liu with the English version of the prenuptial agreement right before the wedding and she had no opportunity to understand it. Liu's attorney acknowledged that the evidence indicated Liu met alone with Jin at his office, she signed the English version of the prenuptial agreement, her signature was notarized at that time, and the decedent "had nothing to do with that." Although decedent did not threaten not to marry Liu if she refused to sign the prenuptial agreement, Liu signed the English and Chinese versions because decedent asked her to, without knowing what she was doing and without being told she had any alternative other than to sign the prenuptial agreement. Liu also disputed she had adequate knowledge of decedent's property and financial obligations. She claimed the financial disclosure statements were not attached to the copies signed by Liu. In addition, Liu argued Jin was not qualified to provide legal advice regarding the prenuptial agreement.

Liu's attorney further argued Jin violated the attorney/client privilege when he disclosed in his declaration that he met with Liu and went over the prenuptial agreement with her. The trial court noted that there was no violation of any privilege because these facts were well known by many others. Liu's attorney argued Jin breached a duty of loyalty to Liu by stating in his business records that he spent an hour reviewing the prenuptial agreement with Liu, whereas he actually only spent a few minutes with her, asking her to sign the prenuptial agreement. In addition, Liu's attorney argued the

7

relationship between decedent and Liu was not, as Peter claimed, that of merely housekeeper and master, with decedent marrying Liu so that she could immigrate to the United States merely to serve as decedent's caretaker.

On October 18, 2011, the trial court issued a detailed tentative written statement of decision, denying Liu's application for a family allowance on the grounds the prenuptial agreement was valid, Liu's request for a family allowance was unreasonable, and Liu had waived any right to a family allowance by voluntarily signing the prenuptial agreement. The court ordered that the tentative decision was to become the court's statement of decision unless within 10 days after service of the tentative decision, a party controverted the tentative decision or made proposals not included in the tentative decision. Liu filed a response to the tentative decision within 10 days, disputing the trial court's finding that she signed the Chinese version of the prenuptial agreement on February 22, 2006. Liu argued there was evidence she did not receive or sign the Chinese version until months later, and she testified she did not recall ever signing it. In addition, Liu argued there was insufficient evidence the financial disclosure documents were attached to the English version of the prenuptial agreement.

Liu requested the court to make additional findings not addressed in the tentative decision, including making a finding that Jin violated his ethical obligations to her as her attorney. Liu also asked the court to make a finding as to whether there was a confidential relationship between her and decedent before their marriage, which she relied on when signing the prenuptial agreement. In a response to Liu's opposition to the

8

tentative decision, Peter asserted that Liu was inappropriately attempting to reargue the case and raise new issues. In effect, Liu was making an improper motion for new trial or motion to set aside judgment.

On December 19, 2011, the trial court entered a judgment on Liu's petition for a family allowance, tentatively decided on October 18, 2011. The court stated in its judgment that the court denied Liu's challenge to the validity of the prenuptial agreement, found the prenuptial agreement valid, and denied Liu's petition for a family allowance. Liu filed notices and amended notices of appeal from the October 18, 2011 tentative decision and December 19, 2011 judgment.

In the separate will contest trial in December 2011, the court rejected the competing will and codicil dated January 12, 2011, and February 23, 2011, introduced by Liu. The trial court found them to be forgeries. The court ordered the estate to be administered under the will and codicil dated February 27, 2007 and July 27, 2007, respectively. Liu does not challenge the will contest ruling on appeal.

III

VALIDITY OF THE PRENUPTIAL AGREEMENT

Liu raises the sole issue of whether she voluntarily executed the prenuptial agreement.

A. *Standard of Review*

"This court applies the substantial evidence test to the trial court's resolution of pure questions of fact and independently reviews questions of law, such as the selection

9

of the controlling rule.  With respect to mixed questions of law and fact, this court reviews the trial court's application of law to fact under a deferential clearly erroneous standard if the inquiry is predominantly factual.  But when the application of law to fact is predominantly legal, such as when it implicates constitutional rights and the exercise of judgment about the values underlying legal principles, this court's review is de novo." (*In re Collins* (2001) 86 Cal.App.4th 1176, 1181.)

*B. Choice of Law Provision*

We apply Pennsylvania law in determining whether the prenuptial agreement is valid and enforceable.  This is because the prenuptial agreement contains a choice of law provision stating that the prenuptial agreement was "entered into in Pennsylvania and shall be construed under and in accord with the laws of Pennsylvania and shall in no way be affected by any change in domicile of either or both parties."  Generally, under the choice of law provision, enforcement of substantive rights, such as enforceability of the prenuptial agreement, is to be governed by the laws of Pennsylvania and procedural matters are governed by the law of the forum, California.  (*World Wide Imports, Inc. v. Bartel* (1983) 145 Cal.App.3d 1006, 1012.)

*C.  Contract Principles Apply to the Prenuptial Agreement*

Under Pennsylvania law, general contract principles govern prenuptial agreements.  (*Simeone v. Simeone* (1990) 525 Pa. 392 [581 A.2d 162, 165].)  Absent fraud, misrepresentation, or duress, spouses are bound by the terms of their prenuptial agreement.  (*Id.* at p. 165.)  "Contracting parties are normally bound by their agreements,

10

without regard to whether the terms thereof were read and fully understood and irrespective of whether the agreements embodied reasonable or good bargains." (*Ibid.*) Therefore, the terms of a prenuptial agreement shall "be regarded as binding, without regard to whether the terms were fully understood by appellant. *Ignorantia non excusat.*" (*Id.* at p. 166.) Based on these principles, the court in *Simone* rejected the appellant's contention that a prenuptial agreement "should be declared void on the ground that she did not consult with independent legal counsel. To impose a *per se* requirement that the parties entering a prenuptial agreement must obtain independent legal counsel would be contrary to traditional principles of contract law, and would constitute a paternalistic and unwarranted interference with the parties' freedom to enter contracts." (*Ibid.*)

In the instant case, Liu argued that, even though she met with counsel, she did not know what she was doing when she signed the prenuptial agreement. She was handed the prenuptial agreement to sign and did not bother to read it. Furthermore, she claims Jin only presented her with an English version to sign. Initially, she denied signing the Chinese prenuptial agreement version, but a handwriting expert established the signature on the agreement was her signature. There was also evidence supporting a reasonable inference that she reviewed and signed the Chinese prenuptial agreement version before her marriage. Regardless of whether Liu understood the terms of the prenuptial agreement when she signed the English and Chinese prenuptial agreement versions, the prenuptial agreement is a valid, enforceable agreement and Liu is bound by its terms, absent fraud, misrepresentation, or duress. (*Id.* at pp. 165-166.)

11

*D. Enforceability of a Prenuptial Agreement under Pennsylvania Statutory Law*

Under Pennsylvania law, applicable to the prenuptial agreement in the instant case:

"A premarital agreement shall not be enforceable if the party seeking to set aside the agreement proves, by clear and convincing evidence, that:

(1) the party did not execute the agreement voluntarily; or

(2) the party, before execution of the agreement:

(i) was not provided a fair and reasonable disclosure of the property or financial obligations of the other party;

(ii) did not voluntarily and expressly waive, in writing, any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided; and

(iii) did not have an adequate knowledge of the property or financial obligations of the other party." (23 Pa. C.S.A. § 3106.) Liu has the burden of proving the prenuptial agreement is invalid. (23 Pa. C.S.A. § 3106.)

*E. Voluntary Execution of the Prenuptial Agreement*

Liu challenges the prenuptial agreement based solely on the contention she did not execute it voluntarily because her attorney, Jin, had an undisclosed conflict of interest, which Liu did not waive. Liu bases her conflict of interest claim on the fact decedent selected Jin as her attorney and paid him $150 for meeting with Liu when she signed the prenuptial agreement, and this compromised Jin's loyalty to Liu. Liu argues

12

that, because decedent selected Jin as Liu's attorney and paid Jin, there was a significant risk that Jin would not zealously represent Liu. Inferences could be made that decedent selected Jin for the purpose of advocating his own interests of persuading or forcing Liu to sign the prenuptial agreement.

Liu has failed to meet her burden of establishing that she did not voluntarily execute the prenuptial agreement. Under Pennsylvania law, a prenuptial agreement is deemed voluntarily executed absent fraud, misrepresentation, or duress. (*Simeone v. Simeone, supra,* 581 A.2d at p. 165.) It is undisputed there was no fraud or misrepresentation. As to duress, Liu acknowledges that, if a party to an agreement is free to consult with counsel before signing an agreement, courts have uniformly rejected duress as a defense to the agreement. (*Hamilton v. Hamilton* (1991) 404 Pa.Super. 533, 537 [591 A.2d 720, 722].) Liu nevertheless argues there was duress based on not being free to select independent counsel to review the prenuptial agreement. But Liu testified she felt no duress when she signed the prenuptial agreement. Liu stated she did not believe decedent would be unhappy with her if she did not sign the prenuptial agreement. She did not fear he would not marry her or would ask her to return to China if she did not sign the prenuptial agreement. Liu testified no one pressured her to sign the prenuptial agreement. Furthermore, when signing the prenuptial agreement, Liu acknowledged she was "knowingly and voluntarily signing" the prenuptial agreement.

There is also no evidence anyone prevented Liu from choosing an attorney other than Jin. Evidence that decedent found an attorney for Liu, who could discuss the

13

prenuptial agreement in Mandarin Chinese, and decedent paid Jin for his services, does not satisfy Liu's burden of proving she was not free to choose independent counsel. There is no evidence Liu was forced to meet with Jin nor is there any evidence Liu objected to Jin or requested to choose another attorney.

Liu argues she was not informed Jin had an undisclosed conflict of interest in representing her. But Liu has not met her burden of proving any actual conflict, and Liu was aware decedent retained Jin to meet with her and paid him. There is also no evidence Jin ever represented decedent or communicated with him, other than for the purpose of setting up the appointment for Jin to consult with Liu regarding the prenuptial agreement. In addition, Liu concedes in her opening appellate brief that she is not claiming decedent was a current or former client of Jin.

Liu argues Jin's conflict of interest is apparent from evidence that his services were deficient when he met with her. Liu testified Jin met with her for only five minutes, during which he simply told her to sign the prenuptial agreement. But there was substantial evidence to the contrary, and the trial court found Liu's testimony not credible in this regard. In addition, Jin's declaration presented at trial, stated that he was retained to serve as counsel for Liu regarding the prenuptial agreement, and that "Ms. Liu brought the Prenuptial Agreement in English. I reviewed the Prenuptial Agreement part by part with her in the Mandarin language as she indicated to me she could not read or fully understand English. [¶] . . . I recall that my meeting with Ms. Liu regarding her Prenuptial Agreement lasted between one and two hours. [¶] . . . All her questions were

14

answered and I advised her of the content of the agreement and its effect of her rights in the future." Liu acknowledged during her trial testimony that, while meeting with Jin, Liu had the opportunity to ask Jin questions about the prenuptial agreement. Jin's billing invoice further reflected that the meeting lasted an hour.

Liu cites paragraph 13 of the explanatory comment on Pennsylvania Rules of Professional Conduct, Rule 1.7[2], in support of her argument the prenuptial agreement was invalid because decedent retained and paid for Jin meeting with Liu, creating a conflict of interest, and Liu did not waive the conflict. Paragraph 13 of the comments on Rule 1.7 states: "A lawyer may be paid from a source other than the client, including a co-client, if the client is informed of that fact and consents and the arrangement does not compromise the lawyer's duty of loyalty or independent judgment to the client. See Rule 1.8(f). If acceptance of the payment from any other source presents a significant risk that the lawyer's representation of the client will be materially limited by the lawyer's own interest in accommodating the person paying the lawyer's fee or by the lawyer's responsibilities to a payer who is also a co-client, then the lawyer must comply with the requirements of paragraph (b) before accepting the representation, including determining whether the conflict is consentable and, if so, that the client has adequate information about the material risks of the representation."

---

[2] Title 204, Pennsylvania Code section 81.4 (Rule 1.7).

A violation of a profession rule of responsibility, such as Rule 1.7, or comments on the rule, does not necessarily establish a conflict of interest sufficient to support a finding of duress invalidating the prenuptial agreement, and even if it did, Liu has not established a violation. Liu has failed to prove there was a significant risk that Jin's representation of Liu would be materially limited by Jin's own interest in accommodating decedent.

Substantial evidence supports the trial court's finding that Jin provided Liu with competent, independent legal advice, which amounted to much more than a mere five-minute meeting, in which Jin merely instructed Liu to sign the prenuptial agreement. Liu has failed to provide clear and convincing evidence to the contrary. Even if there was evidence to the contrary, we may not reweigh the evidence. "[I]t is the general rule that on appeal an appellate court (1) will view the evidence in the light most favorable to the respondent; (2) will not weigh the evidence; (3) will indulge all intendments and reasonable inferences which favor sustaining the finding of the trier of fact; and (4) will not disturb the finding of the trier of fact if there is substantial evidence in the record in support thereof. [Citations.] It is not the province of the reviewing court to analyze conflicts in the evidence. [Citation.] Rather, when a finding of fact is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence contradicted or uncontradicted, which will uphold the disputed finding. [Citation.]" (*Berniker v. Berniker* (1947) 30 Cal.2d 439,

16

444.) "'Findings of fact must be liberally construed to support the judgment.' [Citation.]" (*Gordon v. City Council of Santa Ana* (1961) 188 Cal.App.2d 680, 686.)

Furthermore, Liu forfeited her conflict of interest challenge by not raising it in the trial court. Liu did not even depose, subpoena or call Jin as a trial witness, even though his testimony was key to this issue. "It is a firmly entrenched principle of appellate practice that litigants must adhere to the theory on which a case was tried. Stated otherwise, a litigant may not change his or her position on appeal and assert a new theory. To permit this change in strategy would be unfair to the trial court and the opposing litigant." (*Brown v. Boren* (1999) 74 Cal.App.4th 1303, 1316.)

Whether Liu had an undisclosed conflict of interest, interfering with his ability to provide Liu with independent representation, is a factual issue. Because Liu did not raise the issue in the trial court during the October 2011 trial on the validity of the prenuptial agreement, Peter did not have an opportunity to present evidence refuting the theory. Liu cannot now raise the theory for the first time on appeal. Any reference or allusion to the theory in the trial court after the October 2011 trial, did not sufficiently preserve the issue for purposes of appeal. In addition, although the trial court in its October 2011 tentative decision makes reference to there being no evidence that Jin had any conflict of interest, the record reveals that Liu did not argue this during the October 2011 trial. Liu therefore forfeited the issue by not raising it at trial and, even if not forfeited, Liu has not met her burden of proving such a conflict existed or that she did not voluntarily execute the prenuptial agreement.

17

## IV

## DISPOSITION

The judgment is affirmed.  Peter is awarded his costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON_____

J.

We concur:


HOLLENHORST_____
            Acting P. J.


MILLER_____
          J.