# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stephen T. Furst,                                 :
                  Appellant          :
                                         :
           v.                                       :
                                         :
Easton Area School District and      :    No. 54 C.D. 2019
Easton Area Board of Education       :    Argued:  December 10, 2019


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
                  HONORABLE CHRISTINE FIZZANO CANNON, Judge
                  HONORABLE ELLEN CEISLER, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                 FILED:  January 30, 2020


          Stephen T. Furst (Furst) appeals from an order of the Court of Common Pleas of Northampton County (trial court), dated December 28, 2018, dismissing his civil complaint in mandamus (mandamus action) upon preliminary objections filed by the Easton Area School District and the Easton Area Board of Education (together, District).  Furst contends the trial court erred in failing to follow the findings made in a separate matter in which he asserts a different trial court judge found the District constructively discharged him and denied his right of due process. Upon review, we affirm the trial court's dismissal of Furst's mandamus action.

          Furst was an employee of the District from January 1985 to December 2015.  Trial Court Opinion (Tr. Ct. Op.) 12/28/18 at 1.  In 2012, he filed a complaint with the District against a colleague, alleging improper computer access to private materials.  *Id.*  Dissatisfied with the District's handling of the matter, Furst reported

the colleague's conduct to the police. Complaint (Compl.) Exhibit (Ex.) D, Tr. Ct. Op. 3/2/18 (Ex. D) at 4, Reproduced Record (R.R.) at 42a. The colleague was later indicted on criminal charges. *See id.* at 4-5, R.R. at 42a-43a.

In 2013, the District hired a new superintendent. Ex. D at 5, R.R. at 43a. With the District's approval, the new superintendent repositioned several administrators, including Furst. *Id.* Furst filed an administrative complaint alleging the District demoted him in retaliation for his police report concerning his colleague's illegal computer activity. Tr. Ct. Op. 12/28/18 at 2; *see* Ex. D at 5-6, R.R. at 43a-44a. The District, and subsequently the Commonwealth's Secretary of Education (Secretary), determined Furst's repositioning was neither unlawful nor retaliatory. Ex. D at 5-6, R.R. at 43a-44a.

Furst had also filed a civil action, in or about November 2013, against the District in the trial court under the Whistleblower Law[1] (whistleblower action). Ex. D at 1, R.R. at 39a; *see* Complaint ¶ 15. In the whistleblower action, Furst essentially repeated his claims of unlawful retaliation by the District. *See* Ex. D at 1-2, R.R. at 39a-40a.

In 2015, while the whistleblower action was pending, Furst reported problems sending some emails from his work computer. Ex. D at 6, R.R. at 44a. The District's ensuing investigation revealed some photographs stored in Furst's computer that the District believed were in violation of District policy. *Id.*

In December 2015, the District held a *Loudermill* hearing[2] concerning the photographs found in Furst's work computer and his alleged violations of District

---

[1] Act of December 12, 1986, P.L. 1559, *as amended*, 43 P.S. §§ 1421 – 1428.

[2] "A *Loudermill* hearing is a pre-termination hearing given to a public employee that is required by due process, as established in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 [(1985)]." *New Kensington-Arnold Sch. Dist. v. New Kensington-Arnold Educ. Ass'n,*

policy. Ex. D at 6, R.R. at 44a. Furst attended with legal counsel. *Id.* He stated the photographs were not his and he had never seen them. Ex. D at 6-7, R.R. at 44a-45a. Furst claimed at least one image belonged to another District employee who had the computer before the District issued it to Furst. Ex. D at 7, R.R. at 45a. However, some images were also found in Furst's own iPhoto library and Dropbox in the computer. *Id.* Further, Furst could not explain how some images first appeared on his hard drive *after* the laptop had been issued to him. *Id.*

After the *Loudermill* hearing, the District's superintendent and solicitor considered whether to bring formal charges for dismissal against Furst. Ex. D at 7, R.R. at 45a. Before any formal charges were presented, however, Furst and the District entered into a Separation Agreement, and Furst resigned in December 2015. *Id.*

In January 2016, Furst amended his complaint in the whistleblower action, alleging his resignation was not voluntary and constituted a retaliatory constructive discharge by the District. Ex. D at 2, R.R. at 40a. In March 2018, the trial court issued an opinion and order in the whistleblower action. R.R. at 37a-58a. While the trial court found Furst established that his 2015 resignation was the result

---

*PSEA/NEA.*, 140 A.3d 726, 728 n.6 (Pa. Cmwlth. 2016). In *Loudermill*, the United States Supreme Court explained the due process required prior to termination:

> The essential requirements of due process . . . are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

*Loudermill*, 470 U.S. at 546 (citations omitted); *see also Metz v. Bethlehem Area Sch. Dist.*, 177 A.3d 384, 388 (Pa. Cmwlth. 2018) (quoting *Loudermill*).

3

of constructive discharge, it also found Furst had failed to establish a causal nexus between his resignation and his alleged whistleblower activities. *See* Compl., Ex. C, Tr. Ct. Order 3/2/18, R.R. at 37a. Accordingly, the trial court entered judgment in favor of the District in the whistleblower action. *Id.* On appeal, this Court affirmed the trial court's decision. *Furst v. Easton Area Sch. Dist.* (Pa. Cmwlth., No. 702 C.D. 2018, filed July 9, 2019), 2019 WL 2932308 (unreported), *appeal denied* (Pa., No. 450 MAL 2019, filed Dec. 17, 2019), 2019 WL 6872991 (unreported).

In August 2018, while his appeal of the whistleblower action was still pending in this Court, Furst filed the instant mandamus action in the trial court. R.R. at 1a-9a. Furst contended the trial court's March 2018 decision in the whistleblower action conclusively established both his constructive discharge and a denial of his due process rights. *See* Compl. ¶¶ 15-17, R.R. at 5a-6a. Accordingly, he asserted he was entitled to immediate reinstatement with back pay and benefits. Compl. ¶ 26 & Wherefore Clause.

In response, the District filed preliminary objections. R.R. at 60a-69a. By order dated December 28, 2018, the trial court sustained the preliminary objections and dismissed the complaint. Tr. Ct. Order 12/28/18, R.R. at 257a. The trial court declined to adhere to the purported findings in the whistleblower action concerning constructive discharge and denial of due process. Tr. Ct. Op. at 5-6, R.R. at 262a-63a. Further, the trial court found mandamus would not lie because alternate remedies were available. *See* Tr. Ct. Op. at 6-8, R.R. at 262a-64a. The trial court concluded Furst could not establish a clear right to relief, because he failed to pursue his administrative remedies. *See id.* This appeal by Furst followed.

4

On appeal, Furst asserts two main arguments, both of which are based on his contention that the trial court in the mandamus action was bound by findings in the earlier whistleblower action. First, he argues the trial court should have overruled the District's preliminary objections because the judge in the whistleblower action had already determined Furst was constructively discharged. Furst's Brief at 4. Second, he contends the trial court in the mandamus action erred in finding alternate remedies were available to Furst, because the judge in the whistleblower action had already determined Furst had been denied due process and was precluded from pursuing those remedies. *Id.*

In reviewing a trial court's decision dismissing a mandamus complaint on preliminary objections, this Court's review is limited to determining whether the trial court committed an error of law or an abuse of discretion. *Dotterer v. Sch. Dist. of Allentown*, 92 A.3d 875, 880 (Pa. Cmwlth. 2014). "When considering preliminary objections, we must consider as true all well-pled material facts set forth in the complaint and all reasonable inferences that may be drawn from those facts." *Id.* However, we need not accept legal conclusions. *Id.* "Preliminary objections should be sustained only in cases where it is clear and free from doubt that the facts pled are legally insufficient to establish a right to relief." *Id.* As such review raises a question of law, our scope of review is plenary. *Id.*

"Mandamus is an extraordinary writ which will only issue to compel performance of a ministerial act or mandatory duty where there exists a clear legal right in the plaintiff, a corresponding duty in the defendant, and want of any other adequate and appropriate remedy." *Dotterer*, 92 A.3d at 880 (internal quotation marks omitted). "If any one of the foregoing elements is absent, mandamus does not lie." *Id.* at 881.

5

Here, Furst pled that the District constructively discharged him and that, as a professional employee, the District was required to comply with tenure and due process requirements relating to his involuntary termination. *See* Compl. ¶¶ 10 & 18-20. Assuming those facts to be true, as we must on preliminary objections, Furst had available to him administrative remedies under the Public School Code of 1949 (School Code).[3] *See* Sections 1127 to 1131 of the School Code, 24 P.S. §§ 11–1127 – 11–1131.

The case of *Black v. Board of Directors of West Chester Area School District*, 510 A.2d 912 (Pa. Cmwlth. 1986), is analogous. Similar to the present controversy, that case involved a mandamus action in a court of common pleas by a professional school employee seeking reinstatement and back pay. *Id.* at 914. The professional school employee claimed he was denied due process because he was denied a hearing following a challenged demotion. *Id.* Ultimately, the court of common pleas sustained a preliminary objection for lack of jurisdiction for failure to exhaust remedies under the School Code. *Id.* On appeal, this Court affirmed on the basis that the remedy for the school board's refusal of the professional employee's hearing request was an appeal to the Secretary. *Id.* at 915. Further, the professional employee's remedy for the underlying claim of wrongful demotion was also an appeal to the Secretary, which he failed to timely pursue. *Id.* Accordingly, this Court affirmed the dismissal of the common pleas court action, leaving the allegedly void demotion in place. *Id.* at 915-16 (alleged invalidity of demotion does not render School Code provision requiring appeal to Secretary inapplicable).

Accepting, as pled, that Furst was constructively discharged and was deprived of due process, the proper remedy is to appeal to the Secretary, who can

---

[3] Act of March 10, 1949. P.L. 30, *as amended*, 24 P.S. §§ 1–101–27–2702.

6

order reinstatement with back pay. *See Black.* Similarly, this Court has previously noted that a person who resigns involuntarily under a constructive discharge situation has available School Code remedies. *Dotterer*, 92 A.3d at 883 (citing *Arnold v. Pittsburgh Bd. of Pub. Educ.*, 415 A.2d 985 (Pa. Cmwlth. 1980), and *Migliore v. Sch. Dist. of Phila.* (Pa. Cmwlth., No. 1663 C.D. 2012, filed June 18, 2013)); *see* 24 P.S. § 11-1131 (stating where professional employee considers himself aggrieved by action of board of directors, he may appeal to the Secretary). "[O]ur Supreme Court has ruled that the exclusivity of the procedural remedies provided by Sections 1127 to 1131 of the School Code, 24 P.S. §§ 11–1127–11–1131, precludes abandonment of statutory procedures in favor of an action in the court of common pleas." *Dotterer*, 92 A.3d at 882. Thus, "mandamus cannot lie where a professional employee fails to pursue the statutory remedy provided by the School Code." *Id.* at 881.

Accordingly, we affirm the trial court's decision sustaining the District's preliminary objections and dismissing the complaint on the basis of the existence of an adequate administrative remedy under the School Code.[4]

_____
CHRISTINE FIZZANO CANNON, Judge

---

[4] Because of our disposition, we need not reach Furst's remaining argument regarding the effect of the trial court judge's determination in the whistleblower action that Furst was constructively discharged.

7

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stephen T. Furst,                 :
         Appellant         :
                           :
      v.                 :
                           :
Easton Area School District and  :   No. 54 C.D. 2019
Easton Area Board of Education  :

## O R D E R

AND NOW, this 30th day of January, 2020, the order of the Court of Common Pleas of Northampton County, dated December 28, 2018, is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stephen T. Furst,
          Appellant

      v.

Easton Area School District and
Easton Area Board of Education

:
:
:
:
:
:
:
:
:

No. 54 C.D. 2019
ARGUED: December 10, 2019

BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE ELLEN CEISLER, Judge

**<u>OPINION NOT REPORTED</u>**

CONCURRING OPINION
BY JUDGE CEISLER                          FILED: January 30, 2020

I concur fully in the majority's analysis and conclusion. I write separately because I believe this Court should also affirm the trial court's dismissal of Stephen T. Furst's (Furst's) mandamus action against the Easton Area School District and the Easton Area Board of Education (jointly, District) on additional, alternate grounds.

Furst bases his arguments on his contention that the Northampton County Court of Common Pleas (trial court) in the mandamus action was bound by findings in the earlier whistleblower action. He argues the judge in the whistleblower action validly determined that (1) he had been constructively discharged, and (2) he had been precluded from pursuing alternate, administrative remedies. Both arguments are incorrect as a matter of law.

**Constructive Discharge**

The trial court in this mandamus action declined to be bound by the finding of constructive discharge in the whistleblower action. Although the judge in the

whistleblower action stated there was sufficient evidence to support a finding of constructive discharge, the ultimate conclusion in that action was that Furst did not establish a causal connection between his resignation and his earlier complaint concerning a colleague. Thus, the trial court in the mandamus action determined the constructive discharge analysis in the whistleblower action did not control the outcome of the mandamus action.[1] Br. for Appellant, Appendix A at 6.

For mandamus relief, "[t]he petitioner's right to performance of a mandatory duty must be well-defined, clear, and specific; where any doubt exists, mandamus will not lie." *Kegerise v. Delgrande*, 183 A.3d 997, 1004 (Pa. 2018) (citing *Equitable Gas Co. v. City of Pittsburgh*, 488 A.2d 270 (Pa. 1985)). Here, the parties point to different portions of the judge's analysis in the whistleblower action that support their respective positions. Taken as a whole, the judge's opinion in the whistleblower action is inconsistent, and therefore unclear.

Furst points to the judge's statements in the whistleblower action that the evidence was "insufficient to find that Furst and his counsel had the opportunity to negotiate terms that were unfair to the District or [terms] that he would not otherwise have received had he resigned under alternative circumstances." Reproduced

---

[1] To the extent Furst contends the trial court's decision in the whistleblower action collaterally estopped the Easton Area School District and the Easton Area Board of Education from disputing his alleged constructive discharge in the mandamus action, he is incorrect. Collateral estoppel precludes relitigation of an issue in a subsequent suit where a prior suit involved the same issue and the same parties (or parties in privity with them), the court's ruling on that issue in the prior action was necessary to the judgment, and the party to be estopped had a full and fair opportunity to litigate the issue in the prior action. *Robinson v. Fye*, 192 A.3d 1225 (Pa. Cmwlth. 2018).

Here, at least one element of collateral estoppel is missing. The trial court in the whistleblower action held Furst failed to establish a causal nexus between his whistleblower activity and his resignation. Whether that resignation constituted a constructive discharge was not necessary to the trial court's judgment in the whistleblower action. Therefore, collateral estoppel does not apply.

Record (R.R.) at 56a. Further, the judge determined "it is abundantly clear Furst had no ability to negotiate" and "had no other option but [to] accept the terms of the [Separation Agreement] and resign from employment with the District." *Id.*

However, the judge also acknowledged that Furst was represented by legal counsel in negotiating with the District, and "the Separation Agreement contains certain provisions that are favorable to Furst and that certain Board members found displeasing." *Id.* The inconsistent elements of the judge's analysis concerning this issue in the whistleblower action supported the trial court's refusal to be bound by that opinion in the mandamus action. The inconsistencies prevented the findings in the whistleblower action from conveying to Furst a right that was clear and well-defined, as required to support mandamus relief under *Kegerise*.

Moreover, Furst's assertion of constructive discharge is precluded as a matter of law.[2] Furst bases his argument on his contention that he signed the Separation Agreement involuntarily in order to avoid termination and harm to his reputation. Thus, Furst's argument amounts to a claim of duress.

Duress is "'that degree of restraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity or apprehension to overcome the mind of a person of ordinary firmness . . . .'" *Sofronski v. Civil Serv. Comm'n*, 695 A.2d 921, 925-26 (Pa. Cmwlth. 1997) (quoting *Carrier v. William Penn Broad. Co.*, 233 A.2d 519, 521 (Pa. 1967)) (additional citation omitted). The law presumes that the person alleging duress possesses ordinary firmness. *Id.*

---

[2] Although this issue was not raised by the parties or the trial court, this Court may affirm on different grounds from those relied on by the trial court, where grounds for affirmance exist. *City of Pittsburgh v. Logan*, 780 A.2d 870 (Pa. 2001) (citing *Belitskus v. Hamlin Twp.*, 764 A.2d 669 (Pa. Cmwlth. 2000)).

Accordingly, "'in the absence of threats of actual bodily harm, there can be no duress where the contracting party is free to consult with counsel.'" *Id.*

Further, settlement agreements are favored in the law. Therefore, they will be upheld in the absence of fraud or mistake. "'Otherwise any settlement agreement will serve no useful purpose.'" *Id.* at 926 (quoting *Greentree Cinemas, Inc. v. Hakim*, 432 A.2d 1039, 1041 (Pa. Super. 1981)).

In *Sofronski*, the plaintiff resigned pursuant to a settlement agreement and then brought a civil action alleging he did so involuntarily. This Court explained that "[s]ince [the plaintiff] consulted his attorney, weighed his options and decided to enter into the settlement agreement, his claim that his resignation pursuant to the agreement was involuntary is without merit." *Id.* (citing *Hamilton v. Hamilton*, 591 A.2d 720 (Pa. Super. 1991) (unemployed, pregnant 18-year-old woman could not claim duress in the execution of a prenuptial agreement, where she had the ability to consult with legal counsel concerning the agreement)).

This Court's reasoning in *Sofronski* is applicable here. It is undisputed that Furst was represented by legal counsel in deciding to enter into the Separation Agreement. He has not alleged fraud, mistake, or a threat of actual bodily harm. Therefore, he is precluded from asserting a claim of duress. Inasmuch as his assertion of duress is the sole basis for his constructive discharge claim, that claim fails as a matter of law. Accordingly, the trial court in this action properly declined to be bound by any suggestion of constructive discharge made by the judge in the whistleblower action.

### Alternate Remedies

Like his constructive discharge argument, Furst's argument that he lacked remedies other than mandamus depends on his assertion that the trial court judge's

opinion in the whistleblower action concerning lack of due process was binding on the trial court in the mandamus action.  There is no merit in that assertion.

Furst points out that the judge in the whistleblower action stated "the evidence supports a finding that during the course of his separation from the District, Furst was not offered the opportunity to exercise his right to due process."  R.R. at 57a. Observing that Furst received a *Loudermill*[3] hearing, the judge in the whistleblower action stated "there is no substantial reason for this [c]ourt to conclude that had Furst not resigned he would have been granted an opportunity for a full hearing before the Board."  R.R. at 55a.  However, the judge went on to find "there is no reason to conclude that Furst would **not** have been afforded the opportunity to take a *de novo* appeal before the Secretary of Education."  *Id.* (emphasis added).

These statements by the trial judge were inconsistent.  Therefore, the trial court in the mandamus action was not required to find absence of due process as a matter of law; the analysis of the trial judge in the whistleblower action was not clear and well-defined as required for a mandamus claim to lie.[4]  *Kegerise*.

Further, like his constructive discharge claim, Furst's due process argument fails as a matter of law.  Notably, Furst's hearing rights were not waivable.  Indeed, Section 1121(c) of the Public School Code of 1949 (School Code),[5] 24 P.S. § 11-1121(c), expressly requires every employment contract with a school district to contain language recognizing that the School Code's provisions cannot be waived, either verbally or in writing.  Section 1127 of the School Code, 24 P.S. § 11-1127, provides hearing rights related to termination of an employee.  Thus, Furst could

---

[3] *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985).

[4] Collateral estoppel is also inapplicable, for the same reason discussed in note 1 above.

[5] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1-101 – 27-2702.

have refused to execute the Separation Agreement, and if the District had then moved forward with dismissal, Furst could have pursued his hearing rights under the School Code before the District, the Secretary of Education, and then this Court if necessary.

Moreover, having received a *Loudermill* hearing, and having thereafter resigned pursuant to the Separation Agreement, Furst was not entitled to any further due process. In *Kegerise*, our Supreme Court found that the termination hearing requirement of Section 1080 of the School Code, 24 P.S. § 10-1080, relating to superintendents, was inapplicable where a superintendent alleging constructive discharge had previously resigned pursuant to a negotiated severance provision in her employment contract with the district. The Court found it would be "an exercise in futility" and an "empty formality" to require compliance with statutory removal requirements where the parties had agreed to severance procedures and the superintendent had already resigned. *Kegerise*, 181 A.3d at 1006-07. The Court further observed, "Section 1080 does not speak of 'resignation,' nor does it require that the removal procedure apply to circumstances where a school board accepts a superintendent's resignation. We cannot impose a duty upon the Board to provide notice and a hearing to a resigning superintendent absent any language in the statute that directs us to do so." *Id.* at 1005.

Here, because Furst was not the District's superintendent, the applicable removal provision is Section 1127 of the School Code, 24 P.S. § 11-1127, not Section 1080. However, like the plaintiff in *Kegerise*, Furst resigned pursuant to the terms of a negotiated agreement. Section 1127 of the School Code, like Section 1080, does not mention resignation. By analogy to *Kegerise*, the School Code did not require any hearing in connection with Furst's resignation, even where he alleged

EC-6

a constructive discharge.  Therefore, his due process argument fails.  Accordingly, the trial court in this action properly declined to be bound by any suggestion of lack of due process made by the judge in the whistleblower action.

## Conclusion

For the foregoing reasons, I would affirm the trial court's order on the above additional, alternate grounds.


_____
ELLEN CEISLER, Judge